## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RITA TESSU, individually, and ) <br> on behalf of all others similarly situated, ) <br> ) <br> Address: ) <br> 14 East Ship Road ) <br> Dundalk, Maryland 21222 ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ADAPTHEALTH, LLC d/b/a ) <br> AMERICA'S HEALTHCARE AT HOME, ) <br> ) <br> Serve registered agent at: ) <br> United Corporate Services, Inc. ) <br> 874 Walker Road, Suite C ) <br> Dover, Delaware 19904 ) <br> ) <br>     Defendant. ) | Case No.: <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Rita Tessu, individually, and on behalf of all others similarly situated, and for her Class Action Complaint against Defendant AdaptHealth, LLC d/b/a America's Healthcare at Home, states:

### BACKGROUND, PARTIES, JURISDICTION AND VENUE

1. Plaintiff Rita Tessu ("Tessu") brings this case to protect the privacy rights of herself and a class of similarly situated people who were sent text messages on their phones by Defendant AdaptHealth, LLC d/b/a America's Healthcare at Home ("AdaptHealth"). AdaptHealth repeatedly sent text messages to Tessu and the putative class members after

Tessu and the putative class members expressly requested that AdaptHealth stop texting them.

2. In the early 1990s, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3. The TCPA affords special protections for people who registered their who request that they be placed on a company's internal do not call list. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

4. The problem with receiving unwanted telemarketing calls is a problem that most people in this country, like Tessu, frequently face. For example, in 2022 alone, approximately 36.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited January 18, 2023). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28,

2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

5. Tessu is an individual who resides in, and is a citizen of, the State of Maryland. Tessu has been a citizen of the State of Maryland at all times material to this Complaint.

6. Tessu brings this action on behalf of herself and all others similarly situated.

7. AdaptHealth is a limited liability company organized under the laws of the Delaware that has been in good standing to transact business at all times relevant to this Complaint.

8. AdaptHealth describes itself as a "full-service home medical equipment and respiratory company."

9. AdaptHealth offers many medical products for sale, including, but not limited to, respiratory therapy products.

10. AdaptHealth transacts business nationwide and has operations in 46 states, including locations in the State of Maryland.

11. AdaptHealth markets its products and services, in part, through sending text message advertisements to consumers' cell phones and by placing prerecorded calls to consumers' cell phones.

12. Tessu is the owner of a cell phone. Her phone number is 609-XXX-2683.

13. Tessu's phone is a residential line that is used primarily for personal purposes, namely, to communicate with friends and family members and to communicate about other personal matters.

14. Tessu's cell phone account is held in her personal name.

15. On April 12, 2022, Tessu received a text message from AdaptHealth, stating, "Reorder your America's Healthcare at Home PAP supplies – https://sn7.us/d0gjahx.

16. On April 12, 2022, Tessu responded to AdaptHealth's text message, stating, "Stop."

17. That same day, AdaptHealth responded to Tessu's "stop" request by sending Tessu a text message, stating, "You are unsubscribed from medical supply alerts. No more text messages will be sent. Reply HELP for help."

18. Despite promising to no longer send Tessu text messages, on April 19, 2022, AdaptHealth sent Tessu another marketing text message, stating, "Reorder your America's Healthcare at Home PAP supplies – https://sn7.us/cghv2nv."

19. On May 3, 2022, AdaptHealth sent Tessu a marketing text message, stating, "Reorder your America's Healthcare at Home PAP supplies – https://sn7.us/m276b9y."

20. On May 10, 2022, AdaptHealth sent Tessu a marketing text message, stating, "Reorder your America's Healthcare at Home PAP supplies –https://sn7.us/m276b9y."

21. On May 17, 2022, AdaptHealth sent Tessu a marketing text message, stating, "Reorder your America's Healthcare at Home PAP supplies –https://sn7.us/mck8wgxe."

22. On May 17, 2022, Tessu again responded to AdaptHealth's text messages, by stating, "Stop."

23. That same day, AdaptHealth responded to Tessu's "stop" request by sending Tessu a text message, stating, "You are unsubscribed from medical supply alerts. No more text messages will be sent. Reply HELP for help."

24. Despite twice promising to no longer send Tessu text messages, on May 24, 2022, AdaptHealth sent Tessu another marketing text message, stating, "Reorder your America's Healthcare at Home PAP supplies – https://sn7.us/9kuzytg."

25. On May 31, 2022, AdaptHealth sent Tessu a marketing text message, stating, "Reorder your America's Healthcare at Home PAP supplies – https://sn7.us/5qr9djp."

26. On May 31, 2022, Tessu again responded to AdaptHealth's text message by stating, "stop."

27. That same day, AdaptHealth responded to Tessu's "stop" request by sending Tessu a text message, stating, "You are unsubscribed from medical supply alerts. No more text messages will be sent. Reply HELP for help."

28. Despite promising to not send Tessu text messages on three prior occasions, on June 7, 2022, Adapt Health sent Tessu another marketing text message, stating, "Reorder your America's Healthcare at Home PAP supplies – https://sn7.us/89rzins."

29. Each of the links in the text messages described above link to AdaptHealth's website.

30. Tessu received each of these text messages on her phone while residing in the State of Maryland.

31. After Tessu advised Adapt Health on multiple occasions that she no longer wished to be contacted by Adapt Health, thereby revoking any consent to be contacted, Adapt Health then began incessantly calling Tessu's cell phone.

32. Beginning on May 9, 2022, and continuing through January 2023, Adapt Health called Tessu's cell phone and left her at least 26 prerecorded voicemail messages.

5

Each of the voicemail messages state, "Hello. This is America's Healthcare at Home an Adapt Health company. We are calling regarding your resupplies. Please call us back at 1-855-576-2065. Thank you. We look forward to speaking with you soon."

33. Tessu received each of these calls on her phone while residing in the State of Maryland.

34. Notably, prior to receiving text messages from AdaptHealth, Tessu had previously advised AdaptHealth that she did not want them to communicate with her.

35. AdaptHealth's conduct violated the privacy rights of Tessu and the putative class members, as they were subjected to annoying and harassing text messages. AdaptHealth's texts intruded upon the rights of Tessu and the putative class members to be free from invasion of their interest in seclusion.

36. AdaptHealth's conduct caused Tessu and the putative class members to waste time addressing and/or otherwise responding to the unwanted texts and calls.

37. On information and belief, AdaptHealth sent text messages and prerecorded voice calls to Tessu and the putative class members for the purpose of selling its products and services.

## Class Allegations

38. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Tessu brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of Rule 23.

39. Tessu seeks to represent the following classes:

**Internal DNC class:** All persons in the United States who from four years prior to the filing of this action through class certification to whom: (1) AdaptHealth sent text messages marketing its products, (2) AdaptHealth sent more than one text message to the person in a twelve-month period, (3) after the person requested that AdaptHealth stop sending them text messages.

**Prerecorded voice class:** All persons in the United States who from four years prior to the filing of this action through class certification to whom: (1) AdaptHealth placed a prerecorded voice message; (2) after said person requested that AdaptHealth stop calling them through a text message or conversation with an AdaptHealth representative.

40. Tessu reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

41. The members of the proposed classes are so numerous that joinder of all members is impracticable. Tessu reasonably believes that hundreds or thousands of people have been harmed by AdaptHealth's actions. The phone numbers of the members of the proposed class are readily identifiable through records available to AdaptHealth or those acting on its behalf.

42. Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

43. On information and belief, AdaptHealth has texted and continues to text people who have requested that AdaptHealth stop calling them, i.e., to be placed on AdaptHealth's internal do not call list. It is reasonable to expect that AdaptHealth will continue to send such text messages absent this lawsuit.

44. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether AdaptHealth sent text messages to Tessu and the putative class members after they requested that AdaptHealth no longer send them text messages;

   b. Whether AdaptHealth placed prerecorded voice calls to Tessu and the putative class members without the appropriate form of consent;

   c. Whether AdaptHealth's conduct violates 47 U.S.C. § 227(c);

   d. Whether AdaptHealth's conduct violates 47 U.S.C. § 227(b);

   e. Whether AdaptHealth's conduct violates the rules and regulations implementing the TCPA; and,

   f. Whether Tessu and the putative class members are entitled to increased damages for each violation based on the willfulness of AdaptHealth's conduct.

45. Tessu's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

46. Tessu and her counsel will fairly and adequately protect the interests of the members of the proposed class. Tessu's interests do not conflict with the interests of the

proposed class she seeks to represent. Tessu has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

47. Tessu's counsel will vigorously litigate this case as a class action, and Tessu and her counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

48. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

49. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

50. Questions of law and fact, particularly the propriety of sending text messages to persons who requested that AdaptHealth no longer text them, i.e., to place them on AdaptHealth's internal do not call list, predominate over questions affecting only individual members.

51. AdaptHealth has acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

### Count I - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) *et seq.*

52. Tessu incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

53. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

54. The regulations prescribed under Section 227(c) require companies like AdaptHealth, who engage in telemarketing to institute "procedures for maintaining a list of persons who request not to receive telemarketing calls on or behalf of that person or entity." *See* 47 C.F.R. § 64.1200(d).

55. These procedures must meet several minimum standards, including, but not limited to:

   **(1)** ***Written policy.*** Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

   **(2)** ***Training of personnel engaged in telemarketing.*** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

**(3)** *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

**(4)** *Identification of sellers and telemarketers.* A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

**(5)** *Affiliated persons or entities.* In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

**(6)** *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

*See* 47 C.F.R. § 64.1200(d)(1)-(6).

56.     AdaptHealth failed to maintain and/or implement these minimum standards by repeatedly sending text messages to Tessu and the putative class members after Tessu

and the putative class members requested that AdaptHealth stop sending them text messages.

57. In addition, the TCPA allows the Court to enjoin AdaptHealth's violations of the TCPA's regulations prohibiting calls to phone numbers that should have been placed on AdaptHealth's internal do not call list. *See* 47 U.S.C. §§ 227(c)(5)(A).

58. By sending text messages to the phones of Tessu and the putative class members after their numbers should have been placed on AdaptHealth's internal do not call list, AdaptHealth violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

59. AdaptHealth knew or should have known that Tessu and the putative class members did not wish to receive text messages as such persons expressly advised AdaptHealth that they did not wish to receive text messages from AdaptHealth.

60. Tessu and the putative class members are entitled to damages of $500.00 per violation for each text message sent by AdaptHealth in violation of the TCPA and up to $1,500.00 per violation if the Court finds that AdaptHealth willfully violated the TCPA.

**Count II - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)** *et seq.*

61. Tessu incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

62. The TCPA states, in part:

> It shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using [a] prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . .

12

47 U.S.C. § 227(b)(1).

63. The Federal Communications Commission's regulations implementing the TCPA provide that telephone solicitations cannot be made to a recipient without the recipient's "prior express written consent." *See* FCC 12-21, CG Docket 02-278 (effective October 16, 2013); 47 C.F.R. § 64.1200(a)(2)

64. The term "prior express written consent" means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8)(i).

65. To the extent AdaptHealth ever had "prior express written consent" to contact Tessu, such consent was revoked orally by Tessu when she advised AdaptHealth to stop calling her.

66. To the extent AdaptHealth ever had "prior express written consent" to contact Tessu, such consent was also revoked in writing by Tessu when she advised AdaptHealth via text message to stop communicating her.

67. The TCPA provides for a private right of action and statutory damages of least $500, and up to $1,500.00 per violation for each violation of Section 227(b). 47 U.S.C. § 227(b)(3).

68. AdaptHealth violated Section 227(b) of the TCPA by placing prerecorded voice calls to Tessu and the putative class members despite not having "prior express consent" to place such calls.

69. AdaptHealth knew or should have known that Tessu and the putative class members did not provide their prior express written consent to receive such prerecorded voice calls from AdaptHealth.

**Demand for Judgment**

WHEREFORE Plaintiff Rita Tessu, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant AdaptHealth, LLC pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Tessu as the class representative;

b. Enter an order appointing Santoni, Vocci & Ortega, LLC and Butsch Roberts & Associates LLC as counsel for the class;

c. Enter judgment in favor of Tessu and the putative class for all damages available under the TCPA, including statutory damages of up to $500 per violation of the Section 227(c) TCPA, or up to $1,500 per violation of the TCPA if AdaptHealth willfully violated Section 227(c) of the TCPA;

d. Enter judgment in favor of Tessu and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of the Section 227(b) TCPA, or up to $1,500 per violation of the TCPA if AdaptHealth willfully violated

Section 227(b) of the TCPA;

e. Enter judgment in favor of Tessu and the putative class that enjoins AdaptHealth from violating the TCPA's regulations prohibiting AdaptHealth from sending text messages to persons who have requested that AdaptHealth stop texting them;

f. Award Tessu and the class all expenses of this action, and require that AdaptHealth pay the costs and expenses of class notice and administration; and,

g. Award Tessu and the class such further and other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff Rita Tessu demands a jury trial in this case.

By: /s/ *Chelsea Ortega*
Chelsea Ortega #19327
Santoni, Vocci, & Ortega LLC
201 W. Padonia Road, Suite 101
Lutherville-Timonium, Maryland 21093
Phone: (443) 921-8161
Fax: (410) 525-5704

**BUTSCH ROBERTS & ASSOCIATES LLC**

Christopher E. Roberts (*pro hac* forthcoming)
231 S. Bemiston Avenue, Suite 260
Clayton, Missouri 63105
Phone: (314) 863-5700
Fax: (314) 863-5711
CRoberts@butschroberts.com