IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RITA TESSU, individually, and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>ADAPTHEALTH, LLC d/b/a AMERICA'S HEALTHCARE AT HOME,<br><br>Defendant. | Case No. 1:23-cv-00364-SAG<br><br>Hon. Stephanie A. Gallagher |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNT I OF PLAINTIFF'S CLASS ACTION COMPLAINT

Pursuant to Local Rule 105, Defendant AdaptHealth, LLC d/b/a America's Healthcare at Home ("AdaptHealth") respectfully submits this memorandum of law in support of its Motion to Dismiss Count I of Plaintiff's Class Action Complaint.

## INTRODUCTION

In Count I of her Class Action Complaint, Plaintiff alleges that AdaptHealth violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), specifically Section 227(c)(5), by transmitting text messages to her cell phone after she asked for the text messages to stop. Plaintiff's claim fails, however, because the do-not-call regulation on which she relies, 47 C.F.R. § 64.1200(d), unambiguously applies only to *residential* landlines and not cell phones. Accordingly, Count I of Plaintiff's Class Action Complaint fails to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and must be dismissed.

## ALLEGATIONS OF THE COMPLAINT

According to the allegations[1] in the Class Action Complaint, on or about April 12, 2022, Plaintiff received a text message on her cell phone from AdaptHealth inviting her to "Reorder your America's Healthcare at Home PAP supplies." Compl. ¶ 15. Plaintiff responded with a "Stop" message and received confirmation that she was unsubscribed from medical supply alerts. *Id.* ¶¶ 16-17. Afterward, Plaintiff received approximately seven identical text messages during April, May, and June 2022. *Id.* ¶¶ 18-28. After two of these subsequent text messages, Plaintiff responded with a "Stop" message and received confirmation that she would be removed from future medical supply alerts. *Id.* ¶¶ 22-23, 26-27.

In addition to the text messages, Plaintiff also received approximately 26 prerecorded voicemail messages from AdaptHealth from May 9, 2022 through January 2023 regarding reordering of medical supplies. *Id.* ¶32. Plaintiff alleges that, prior to receiving the text messages, she informed AdaptHealth that she did not want AdaptHealth to communicate with her. *Id.* ¶ 34.

## LEGAL STANDARD FOR A MOTION TO DISMISS

A Rule 12(b)(6) motion questions the legal sufficiency of a pleading. To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."). A complaint "does not need detailed factual

---

[1] Solely for purposes of Fed. R. Civ. P. 12(b)(6) and this motion, AdaptHealth accepts as true all well-pleaded facts and inferences contained in Plaintiff's Complaint.

allegations," but the allegations "must be enough to raise a right to relief above the speculative level." *Id.*

## ARGUMENT

In Count I of the Class Action Complaint, Plaintiff alleges that AdaptHealth violated 47 U.S.C. § 227(c)(5) by transmitting text messages to her cell phone after she requested that the text messages stop. Compl. ¶¶ 52-60. Section 227(c) authorizes the creation of the National Do-Not-Call Registry "to protect *residential* telephone subscribers' privacy rights," 47 U.S.C. § 227(c)(1) (emphasis added), by creating a database of phone numbers of "*residential* subscribers who object to receiving telephone solicitations[.]" *Id.* at § 227(c)(3) (emphasis added). Section 227(c)(5) establishes a private right of action to anyone "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5). Plaintiff bases her claim on 47 C.F.R. §§ 64.1200(d). Compl. ¶¶ 35, 83. Similar to the language of the statute, Section 64.1200(d) states that "[n]o person or entity shall initiate any call for telemarketing purposes to a *residential* telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d) (emphasis added). Based on the plain language of Sections 227(c)(5) and 64.1200(d), Plaintiff has not sufficiently alleged a right of action because she alleges that her phone number is associated with a cell phone, not a *residential* landline. Compl. ¶ 12.

When interpreting a statute, courts must start with the text of the statute itself. *Dep't of Soc. Servs., Div. of Child Support Enf't v. Webb*, 908 F.3d 941, 945 (4th Cir. 2018). "Congress 'says in a statute what it means and means in a statute what it says there.'" *Id.* at 946 (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). "If the statute's

language is plain, that is where the inquiry should end. The Court should give effect to every word of a statute whenever possible." *Id.* (internal quotations and citations omitted). In this case, Sections 227(c) and 64.1200(d) are unambiguous. Section 227(c) is clearly directed toward *residential* lines and allows a right of action under Section 227(c)(5) for those residential telephone subscribers when two conditions are met: (1) the plaintiff receives more than one call in a 12-month period on behalf of the same entity, and (2) the call violates TCPA regulations. 47 U.S.C. § 227(c)(5). In other words, without a violation of TCPA regulations, no right of action accrues. Here, Plaintiff alleges that AdaptHealth violated Section 64.1200(d) of the TCPA regulations, which specifically pertains only to "*residential* telephone subscriber[s]." 47 C.F.R. 64.1200(d) (emphasis added). Plaintiff's allegations fail to establish a violation of either Section 64.1200(d).

Plaintiff alleges that her phone number is a cellular phone number. Compl. ¶ 12. As noted above, however, 47 U.S.C § 227(c) and 47 C.F.R. §§ 64.1200(d) expressly apply to residential lines, not cell-phone lines. The TCPA plainly distinguishes between residential and cellular lines. This is evident in the fact that the TCPA addresses the use of automated telephone dialing systems to call cell phones and residential lines in two separate provisions. 47 U.S.C. § 227(b)(1)(A)(iii) (relating to cell phones), 227(b)(1)(B) (relating to residential lines).

The U.S. Supreme Court and other federal courts have recognized this statutory distinction. *See Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172 (2021) (explaining that the TCPA "separately prohibits calls using 'an artificial or prerecorded voice' to various type of phone lines, including home phones and cell phones," making clear that the TCPA treats *residential* phone lines as distinct from *cellular* phone lines); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014) (differentiating between residential lines and cell-phone lines when analyzing the statutory intent behind the phrases "intended recipient" and "called parties"); *Breslow v. Wells*

*Fargo Bank*, 755 F.3d 1265 (11th Cir. 2014) (affirming ruling of the district court that explained that "practical realities support a distinction between residential and cellular lines"); *Bates v. I.C. Sys.*, 2009 WL 3459740, at *1 (W.D.N.Y. Oct. 19, 2009) (noting that the TCPA differentiates between calls made to cellular and residential lines).

Plaintiff cannot assert a claim under 47 U.S.C. § 227(c) based on alleged calls to her cellular phone number because both the statute and the implementing regulation under 47 C.F.R. §§ 64.1200(d) restrict only calls made to a *residential telephone subscriber* but not calls made to a cellular phone subscriber. The omission was deliberate in light of the TCPA's textual distinction between residential and cellular phones. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) ("A familiar principle of statutory construction ... is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute."), *superseded by statute on other grounds*, Pub. L. No. 109-366, § 7, 120 Stat. 2600, 2635-36 (2006) (amending 28 U.S.C. § 2241); *Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'"). Further, as recently recognized by the Western District of North Carolina, in holding that Section 64.1200(c) did not apply to wireless numbers, "[c]ell phones do not present the same concerns as residential telephones. . . . Cell phones' mobility and functionality to silence or decline calls alleviate the concerns inherent with a home telephone." *Gaker v. Q3M Insurance Solutions*, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023). Other federal courts, such as the Western District of North Carolina, the Eastern District of Texas, and the Middle District of Tennessee, have considered this issue and concluded that the do-not-call regulations do not encompass cell phones. *See, e.g., Gaker*, 2023 WL 2472649; *Cunningham v.*

*Politi*, 2019 WL 2519568 at *4 (E.D. Tex. Apr. 30, 2019), *report and recommendation adopted*, 2019 WL 2524736 (E.D. Tex. June 19, 2019); *Cunningham v. Sunshine Consulting Group, LLC*, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018), *report and recommendation adopted*, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018).

Presumably, Plaintiff brings her claim under Section 64.1200(d) by relying on Section 64.1200(e), which states that Section 64.1200(d) applies equally to wireless lines. The Federal Communications Commission ("FCC") adoption Section 64.1200(e), in contravention of the TCPA's explicit limitation of Section 227(c) to residential numbers, not based on any express statutory provision,[2] but based on the FCC's "belief" that wireless numbers "should not be excluded" from the Registry in order to further the "overall intent" of the TCPA. *In re Rules and Regulations Implementing the Telephone Consumer Prot. Act*, 18 FCC Rcd. 14014, 14037-38 (F.C.C. 2003) ("2003 Order").[3] In other words, Section 64.1200(e) does not arise from the language of the TCPA but from the FCC's interpretation of the TCPA and its "intent." As such, Section 64.1200(e) is not binding on this Court.

The nature of the 2003 Order and Section 64.1200(e) as interpretive is significant. Under the Administrative Orders Review Act (known as the "Hobbs Act"), the U.S. Courts of Appeals have exclusive jurisdiction to "determine the validity of . . . all final orders of the Federal

---

[2] The FCC's rule under § 64.1200(e) exceeds the scope of § 227(c). Congress did not authorize the FCC to create a registry for wireless or cellular subscribers and instead explicitly instructed the agency to establish, pursuant to the TCPA, "a single national database to compile a list of telephone numbers of *residential subscribers* who object to receiving telephone solicitations" within the privacy of their homes. *See* 47 U.S.C. § 227(c)(3) (italics added). This limitation is reflected in the implementing regulation under § 64.1200(c) which applies to only "residential telephone subscriber[s]," and does not refer to wireless or cellular subscribers.

[3] As stated in the 2003 Order, the FCC expressly relied on the autodialer provision under § 227(b) (and *not* § 227(c)) of the TCPA to conclude that "the national database should allow for the registration of wireless telephone numbers, and that such action will better further the objectives of the TCPA." 2003 Order ¶ 33.

Communications Commission[.]" 28 U.S.C. § 2342(1). However, the applicability and scope of the Hobbs Act depends on two threshold questions: (1) whether the order at issue is "legislative" or "interpretive" and (2) whether there was a prior, adequate opportunity for a party to seek judicial review of the order. *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055-56 (2019). "A legislative rule grants rights, imposes obligations, or produces other significant effects on private interests, while an interpretive rule is an agency's intended course of action, its tentative view of the meaning of a particular statutory term, or internal house-keeping measures organizing agency activities." *Fisher v. Aetna Life Ins. Co.*, 32 F.4th 124, 141 (2d Cir. 2022) (internal quotations omitted). As explained in *PDR Network*, an "'interpretive rule . . . may not be binding on a district court, and a district court therefore may not be required to adhere to it." *Id.* at 2055; *see also PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 982 F.3d 258 (4th Cir. 2020) (holding that the relevant FCC order was interpretive, and thus not binding).

The 2003 Order, which was codified in revisions to Section 64.1200(e), does nothing more than indicate how the FCC is interpreting Section 227(c) and Section 64.1200(e) and does not, itself, confer any substantive rights or obligations. Section 64.1200(e) only has meaning when read in conjunction with the substantive provisions of Sections 64.1200(c) and (d). Consequently, Section 64.1200(e) is an interpretive rule, and the Hobbs Act does not apply. This Court, therefore, should construe Section 64.1200(e) as non-binding and read Sections 227(c) and 64.1200(d) according to their plain language: as applicable only to residential lines, not wireless lines. Where, as here, Plaintiff alleges that her phone number is a cellular phone number, Compl. ¶ 12, Plaintiff has failed to plead a violation of Section 64.1200(d) and has foreclosed a right of action under Section 227(c)(5).

Further, even if Section 64.1200(e) is legislative, AdaptHealth still did not have an adequate prior opportunity to seek judicial review of the regulation. *PDR Network, LLC*, 139 S.Ct. at 2055-56. Although the 2003 Order was the result of the rulemaking process, the notice of proposed rulemaking sought comment in a more general sense about how the use of wireless phone numbers has changed. *In re Rules and Regulations Implementing Telephone Consumer Prot. Act of 1991*, 17 FCC Rcd. 17459, 17484-86 (F.C.C. 2002) ("Proposed Rulemaking"). The Proposed Rulemaking included only passing questions as to whether wireless lines should be considered residential telephone numbers for TCPA purposes. *Id.* at 17485. Moreover, specifically with reference to the Registry, the Proposed Rulemaking simply states that the Federal Trade Commission's proposal for a national Registry "may allow some business and wireless telephone subscribers to register on the national database" while noting that the "TCPA, however, only grants authority to the Commission to establish a national database for residential subscribers." *Id.* at 17491. These vague and brief mentions of including wireless numbers on the Registry, in a Proposed Rulemaking that sought comments broadly about the use of autodialing technologies, caller identification, artificial or prerecorded voice messages, the sending of faxes, and the application of exceptions, such as an established business relationship, did not provide AdaptHealth with an adequate opportunity to seek judicial review of this narrow question – whether wireless numbers should be considered residential numbers and, therefore, eligible to be registered on the national Registry. Accordingly, pursuant to the Supreme Court's guidance in *PDR Network, LLC*, the Hobbs Act does not apply to the 2003 Order or the revisions to Section 64.1200(e) that followed.

**CONCLUSION**

For the foregoing reasons, AdaptHealth respectfully requests that this Court dismiss Count I of the Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: April 20, 2023

By: /s/ Brian D. Koosed
Brian D. Koosed
K&L GATES LLP
1601 K Street, NW
Washington, DC 20006
Phone: (202) 778-9000
Fax: (202) 778-9100
Brian.koosed@klgates.com

Joseph C. Wylie II (*pro hac vice* motion forthcoming)
Nicole C. Mueller (*pro hac vice* motion forthcoming)
K&L GATES LLP
70 West Madison Street, Suite 3300
Chicago, IL 60602
Phone: (312) 372-1121
Joseph.Wylie@klgates.com
Nicole.Mueller@klgates.com

*Attorneys for Defendant AdaptHealth LLC d/b/a America's Healthcare at Home*