## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RITA TESSU, individually, and | ) | |
| on behalf of all others similarly situated, | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-00364-SAG |
| | ) | |
| ADAPTHEALTH, LLC d/b/a | ) | |
| AMERICA'S HEALTHCARE AT HOME, | ) | |
| | ) | |
|      Defendant. | ) | |

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

Table of Contents ..........................................................................................................ii

Table of Authorities.....................................................................................................iv

Introduction. ................................................................................................................1

Factual Background.....................................................................................................2

Legal Standard.............................................................................................................5

Argument .....................................................................................................................5

I.    The plain language of the TCPA and the fundamental purpose of the TCPA
      support the fact that a cell phone user can be a "residential telephone
      subscriber." ......................................................................................................6

      A.    The plain language of the TCPA makes clear that a "residential telephone
            subscriber" can be a cell phone user..........................................................6

      B.    The TCPA's fundamental purpose of protecting consumers from unwanted
            telemarketing communications is served by including cell phone users as
            "residential telephone subscribers." ........................................................11

II.   The plain language of the FCC's regulations also make clear that a cell phone
      user can be a "residential telephone subscriber." ...............................................12

      A.    The TCPA's regulations make clear that a cell phone user can be a
            "residential telephone subscriber."...........................................................12

      B.    The plain language of other FCC regulations make clear that the relevant
            distinction is between a business and residential subscriber, not between a
            wireline and wireless telephone user.........................................................13

      C.    Congress has effectively adopted the FCC's definition of "residential
            telephone subscriber" to include cell phone users......................................14

III.  This Court and the vast majority of courts across the country hold that a cell phone
      user can be a "residential telephone subscriber.". ..............................................15

      A.    This Court has repeatedly held that a cell phone user can be a "residential
            telephone subscriber" under the TCPA. ....................................................15

B.     The overwhelming majority of courts across the country also hold that a cell phone user can be a "residential telephone subscriber" under the TCPA. ................................................................................................ 17

IV.    The Hobbs Act precludes this Court from invalidating the FCC's 2003 Order. ........................................................................................... 21

A.     The Hobbs Act precludes this Court from reviewing the validity of the FCC's order and regulations concerning the TCPA. ................................ 21

B.     The FCC's order and regulations should be adopted by this Court even if the Court determines the FCC's 2003 Order was an "interpretive rule" rather than a "legislative rule." ................................................................. 26

Conclusion ..................................................................................................................... 28

Certificate of Service ..................................................................................................... 29

## **TABLE OF AUTHORITIES**

### **Cases**

*Am. Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106
  (D.C. Cir. 1993)...................................................................................................22

*Asher & Simons, P.A. v. j2 Global Canada, Inc.* 977 F.Supp.2d 544 (D. Md. 2013)..................26

*Atkinson v. Choice Home Warranty*, 2023 WL 166168 (D.N.J. Jan. 11, 2023)...........................17

*Barton v. JMS Assoc. Mktg., LLC*, 2023 WL 2009925 (9th Cir. Feb. 15, 2023) .........................17

*Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195 (D. Mass. 2021) .................................17

*Blalack v. RentBeforeOwning.com*, 2022 WL 7320045 (C.D. Cal. Oct. 11, 2022) ......................17

*Blevins v. Premium Merch. Funding*, 2018 WL 5303973 (S.D. Ohio Oct. 25, 2018) ....................9

*Boardman v. Green Dot Corp.*, 2021 WL 3699856 (W.D.N.C. Aug. 19, 2021) ...................17, 19

*Boger v. Citrix Sys., Inc.*, 2020 WL 1033566 (D. Md. Mar. 3, 2020) (Xinis, J.).....................15-17

*Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258
  (4th Cir. 2020) .....................................................................................................23

*Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011).......................................................6

*Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022) ...................................9, 17

*Clemons v. Bradford O'Neil Agency, LLC*, 2021 WL 6062491 (E.D. Mo. Dec. 22, 2021)....13, 20

*Cunningham v. Politi*, 2019 WL 2519568 (E.D. Tex. Apr. 30, 2019) .....................................18, 20

*Cunningham v. Sunshine Consulting Group, LLC*, 2018 WL 3496538
  (M.D. Tenn. July 20, 2018) .................................................................................18-20

*Dudley v. Vision Solar LLC*, 2021 WL 3077557 (E.D. Pa. July 21, 2021)..................................17

*Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117(2016).................................................22

*Escano v. RCI LLC*, 2022 WL 1751273 (D.N.M. Nov. 28, 2022)...........................................9, 17

*Ewing v. CSOLAR*, 2022 WL 4449326 (S.D. Cal. Sept. 22, 2022)................................................17

*Fischman v. MediaStratX, LLC*, 2021 WL 3559639 (E.D.N.C. Aug. 10, 2021) ....................17, 19

iv

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ........................................ 12

*Gaker v. Q3M Ins. Sols.*, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023) ................................ 18-19

*Gill v. Align Tech.*, 2022 WL 1540016 (E.D. Wisc. May 16, 2022) .......................................... 17

*Gorss Motels, Inc. v. Safemark Sys.*, 931 F.3d 1094 (11th Cir. 2019) ......................................... 19

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1
  (D.C. Cir. 2019).......................................................................................................22-23

*Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099 (W.D. Mo. 2020) ...................................... 18

*Hossfield v. Gov't Emps. Ins. Co.*, 88 F.Supp.3d 504 (D. Md. 2015) .......................................... 11

*Hunsinger v. Alpha Cash Buyers, LLC*, 2022 WL 562761 (N.D. Tex. Feb. 24, 2022)................. 20

*Iowa League of Cities v. Envtl. Prot. Agency*, 711 F.3d 844 (8th Cir. 2013)................................ 22

*Iowa Network Servs., Inc. v. Qwest Corp.*, 385 F.Supp.2d 850 (S.D. Iowa 2005) *aff'd*,
  466 F.3d 1091 (8th Cir. 2006) ................................................................................... 14

*Izor v. Abacus Data Sys., Inc.*, 2019 WL 3555110 (N.D. Cal. Aug. 5, 2019)............................... 18

*Kemen v. Cincinnati Bell Tel. Co. LLC*, 2023 WL 361136 (S.D. Ohio Jan. 23, 2023)................. 14

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019).................................................. 11

*Long v. Cat Exteriors*, 2022 WL 17744052 (W.D. Tex. Dec. 15, 2022) ................................. 17, 20

*Mais v. Gulf Coast Collection Bureau*, 768 F.3d 1110 (11th Cir. 2014) ...................................... 19

*Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722 (D. Mass. Feb. 3, 2022)...................7-9, 17

*McDermet v. DirecTV, LLC*, 2021 WL 217336 (D. Mass. Jan. 21, 2021)...............................17-18

*Mestas v. CHW Group Inc.,* 508 F. Supp. 3d 1011 (D.N.M. 2020) .............................................. 18

*Miholich v. Senior Life Ins. Co.*, 2022 WL 1505865 (S.D. Cal. May 12, 2022)........................... 17

*Nat'l Elec. Mfrs. Ass'n v. Dep't of Energy*, 654 F.3d 496 (4th Cir. 2011).................................... 26

*Noviello v. Holloway Funding Group*, 2023 WL 128395 (N.D. Tex. Jan. 9, 2023)...........9, 17, 20

*Olsen v. Neese*, 2022 WL 17404968 (D. Md. Dec. 1, 2022)............................................................7

*Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*, 983 F.3d 671 (4th Cir. 2020).....27-28

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019) .................22

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015) .................................................................22-23

*Persichetti v. T-Mobile USA, Inc.*, 479 F.Supp.3d 1333 (D. Ga. 2020) ..........................................6

*Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*, 2020 WL 2793954
   (E.D. Pa. May 29, 2020)...........................................................................................................22

*Robison v. 7PN, LLC*, 569 F.Supp.3d 1175 (D. Utah 2021) ............................................................6

*Rogers v. Kijakazi*, 62 F.4th 872 (4th Cir. 2023) ..........................................................................26

*Rose v. New TSI Holdings, Inc.*, 2022 WL 912967 (S.D.N.Y. Mar. 28, 2022) .....................14, 17

*Rosenburg v. LoanDepot.com LLC*; 435 F.Supp.3d 308 (D. Mass. 2020)......................................6

*Sagar v. Kelly Auto. Group*, 2021 WL 5567408 (D. Mass. Nov. 29, 2021) .................................18

*Scarbrough v. Atl. Coast Line R.R. Co.*, 178 F.2d 253 (4th Cir. 1949)........................................11

*Slatin v. Stanford Research Inst.*, 590 F.2d 1292 (4th Cir. 1979) .................................................14

*Smith v. Truman Road Dev., LLC*, 2020 WL 2044730 (W.D. Mo. Apr. 28, 2020) ...................6, 9

*Sorsby v. TruGreen Ltd. P'ship*, 2020 WL 7641288 (N.D. Ill. Dec. 23, 2020) .............................6

*Spurlark v. Dimension Serv. Corp.*, 2022 WL 2528098 (S.D. Ohio July 7, 2022) ......................17

*Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp.3d 648 (W.D. Tenn. 2020)..........................19-20

*Stone v. I.N.S.*, 115 S. Ct. 1537 (1995)..........................................................................................14

*Strange v. ABC Co.*, 2021 WL 798870 (W.D. La. Mar. 1, 2021) .................................................18

*United Seniors Ass'n, Inc. v. Soc. Sec. Admin.*, 423 F.3d 397 (4th Cir. 2005)............................26

*Valdes v. Century 21 Real Est., LLC*, 2019 WL 5388162 (D.N.J. Oct. 22, 2019) .......................18

*West Virginia CWP Fund v. Bender*, 782 F.3d 129 (4th Cir. 2015)..............................................15

*Worsham v. Direct Energy Servs., LLC*, 2021 WL 948819 (D. Md. Mar. 12, 2021) ............11, 15

*Worsham v. Discount Power, Inc.*, 2021 WL 5742382 (D. Md. Dec. 1, 2021) .............................. 6

*Worsham v. Travel Options, Inc.*, 2016 WL 4592373 (D. Md. Sept. 2, 2016) (Bredar, J.) *aff'd*
 678 Fed. App'x 165 (4th Cir. 2017) ...........................................................................15-17

## **Statutes and Regulations**

15 U.S.C. § 6153 ..................................................................................... 1-2, 12-13, 26

28 U.S.C. § 2342 ........................................................................................... 19, 22

47 U.S.C. § 227(a)(2)(A) ....................................................................................8-9

47 U.S.C. § 227(b)(1)(A)(i)-(ii) ...........................................................................9-10

47 U.S.C. § 227(b)(1)(A)(iii) .................................................................................. 10

47 U.S.C. § 227(b)(1)(B) ....................................................................................... 10

47 U.S.C. § 227(c) ........................................................ 2, 4, 6, 8-10, 16-17, 19-20, 27

47 U.S.C. § 227(c)(1) ..................................................................................10, 12-13

47 U.S.C. § 227(c)(3) ............................................................................................ 10

47 U.S.C. § 227(c)(5) .........................................................................................6, 26

47 C.F.R. § 64.1200(c) .......................................................................................... 16

47 C.F.R. § 64.1200(d) ........................................................ 4, 6, 8, 13, 15-16, 23-24

47 C.F.R. § 64.1200(d)(3) ................................................................................23-24

47 C.F.R. § 64.1200(e) ........................................................................2, 13, 16, 23-24

47 C.F.R. § 64.2305(b) .......................................................................................... 14

47 C.F.R. § 64.2305(d) .......................................................................................... 14

73 PENN. STAT. ANN. § 2242 ................................................................................. 27

MO. REV. STAT. § 407.1095(2) ................................................................................. 1

Pub. L. No. 108-10, 117 Stat. 557 (2003) ................................................................. 1

Pub. L. No. 109-21 (July 9, 2005) .......................................................................... 14

Pub. L. No. 111-331 (Dec. 22, 2010) ........................................................... 1

Pub. L. No. 114-74 (Nov. 2, 2015) .............................................................. 1

Pub. L. No. 116-105 (Dec. 30, 2019) ........................................................... 1

S.D. CODIFIED LAWS § 49-31-1(2) ........................................................... 27

**FCC Rulings**

*In re: Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,*
    17 F.C.C. Rcd. 17459, 17485, 17491 (Sep. 18, 2002) ............................................... 25

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
    18 F.C.C. Rcd. 14014 (2003) ...............................................................*passim*

*In the Matter of Tony Chauncey d/b/a Tony Chauncey Prods.,*
    11 F.C.C. Rcd. 1029, 1035-46  (1995) ............................................................... 14

**Other Sources**

Merriam-Webster, Inc., "Residential" *available at*
    https://www.merriam-webster.com/dictionary/residential  ........................................... 7

Merriam-Webster, Inc., "Subscribe" *available at*
    https://www.merriam-webster.com/dictionary/subscriber  ........................................... 7

Merriam-Webster, Inc., Telephone" *available at*
     https://www.merriam-webster.com/dictionary/telephone  ........................................... 7

## INTRODUCTION

"Consumers . . . are fed up with the annoyance of unwanted telephone solicitations. Unlike other communications media, the telephone commands our instant attention. Junk mail can be thrown away. Television commercials can be turned off. The telephone demands to be answered. . . . While [this proposed bill] will not end all unsolicited calls, it will give back to consumers the freedom to choose how their telephone are used."

- Senator Larry Pressler, November 26, 1991, Proceedings and Debates Concerning the Telephone Consumer Protection Act ("TCPA"), 137 Cong. Rec. S18317-01, 1991 WL 250460, *1-2.

In an era in which telephones are now literally connected to us at almost all times, Senator Pressler's words on the floor of the Senate ring truer today than in 1991 when the TCPA was enacted. Consumers remain fed up with the annoyance of unwanted telephone solicitations. The telephone, usually being connected to us at all times, demands to be answered more than ever. While the TCPA has certainly not ended all unsolicited telemarketing communications, the TCPA remains a powerful tool for giving consumers the freedom to choose how their phones are used by holding accountable telemarketers who violate the TCPA.

That is precisely what this case is about – giving Plaintiff Rita Tessu the freedom to choose who can and cannot contact her on her cellular telephone. Ms. Tessu repeatedly asked Defendant to stop contacting her on her cell phone. Defendant repeatedly promised it would no longer communicate with Ms. Tessu. Yet, Defendant continued to incessantly contact Ms. Tessu on her cell phone. With nowhere else to turn, Ms. Tessu turned to the TCPA to protect herself and others from such unwanted communications. This is the precise goal of the TCPA.

To better achieve this goal, in 2003, President George W. Bush signed into law the "Do-Not-Call Implementation Act." Pub. L. No. 108-10, 117 Stat. 557 (2003). The "Do-Not-Call Implementation Act" mandated that the FCC "issue a final rule . . . under the Telephone Consumer

Protection Act" regarding the do-not-call regulations. 15 U.S.C. § 6153 (2003). The FCC followed its directive from Congress and issued a rule and corresponding regulations that applied the TCPA's do-not-call protections to persons with "wireless telephone numbers." *See* 47 C.F.R. § 64.1200(d)-(e). Persons like Ms. Tessu, who request to be placed on a company's internal do-not-call list, were afforded the protections of the TCPA. *Id.*

Defendant contends, however, that Ms. Tessu's claims under Section 227(c) of the TCPA must be dismissed because calls placed to cell phones are not entitled to the internal do-not-call list protections of the TCPA ("DNC protections"). Fortunately for Ms. Tessu, Defendant's arguments that Ms. Tessu is not protected by the TCPA lack merit for four primary reasons. First, the language of the TCPA itself establishes that a "residential telephone subscriber" can include a cell phone user. Second, the plain language of the FCC's regulations establish that a "residential telephone subscriber" can include a cell phone user. Third, this Court, and an overwhelming majority of courts recognize that the TCPA's DNC protections apply with equal force to calls placed to cell phones. Last, Defendant is precluded under the Hobbs Act from attempting to invalidate the FCC's orders and regulations that unequivocally apply the TCPA's DNC protections to cell phones.

In an era in which unwanted telemarketing communications are more rampant than ever, this Court should not adopt Defendant's proposed minority position and strip away the TCPA's DNC protections for cell phone users. Defendant's motion should be denied.

## **FACTUAL BACKGROUND**

Ms. Tessu owns a cell phone. Dkt. 1, ¶ 12. Her cell phone is a residential line that is used primarily for personal purposes, such as communicating with friends and family. *Id.* at ¶ 13. Ms.

Tessu's cell phone account is not held in the name of a business, but in her personal name. *Id.* at ¶ 14.

Defendant's harassment of Ms. Tessu began on April 12, 2022. While Ms. Tessu previously advised Defendant that she no longer wanted to be contacted by Defendant on her cell phone, on April 12, 2022, Ms. Tessu received a text message from Defendant attempting to sell her medical supplies. *Id.* at ¶¶ 15, 34. The text message stated, "Reorder your America's Healthcare at Home PAP supplies" with a link to Defendant's website. *Id.* at ¶¶ 15, 29. Ms. Tessu responded to Defendant's text message by stating, "Stop." *Id.* at ¶ 16. Defendant then responded to Ms. Tessu's text message the same day, stating, "You are unsubscribed from medic          al supply alerts. No more text messages will be sent. Reply HELP for help." *Id.* at ¶ 17.

While Ms. Tessu may have thought Defendant would fulfill its promise and no longer send text messages, she was wrong. One week later, on April 19, 2022, Defendant sent Ms. Tessu another text message stating, "Reorder your America's Healthcare at Home PAP supplies" with a link to Defendant's website. *Id.* at ¶¶ 18, 29. Defendant sent similar text messages to Ms. Tessu on May 3, 10, and 17. *Id.* at ¶¶ 19-21.

Ms. Tessu again attempted to stop the harassing text messages. On May 17, 2022, Ms. Tessu again responded, "Stop." *Id.* at ¶ 22. Defendant again responded to Ms. Tessu's text message the same day, stating, "You are unsubscribed from medical supply alerts. No more text messages will be sent. Reply HELP for help." *Id.* at ¶ 23.

The harassment continued. On May 24, 2022, Defendant again sent Ms. Tessu another text message stating, "Reorder your America's Healthcare at Home PAP supplies" with a link to Defendant's website. *Id.* at ¶ 24, 29. Defendant sent another similar text message to Ms. Tessu on May 31, 2022. *Id.* at ¶ 25.

Perhaps thinking a third "stop" text message request would be a charm, Ms. Tessu again responded "Stop" to the May 31, 2022, text message. *Id.* at ¶ 26. Defendant again responded to Ms. Tessu's text message the same day, stating, "You are unsubscribed from medical supply alerts. No more text messages will be sent. Reply HELP for help." *Id.* at ¶ 27.

Unfortunately, Ms. Tessu's third "stop" request was not a charm. On June 7, 2022, Defendant again sent Ms. Tessu another text message stating, "Reorder your America's Healthcare at Home PAP supplies" with a link to Defendant's website. *Id.* at ¶¶ 28-29.

The messages kept coming. While Ms. Tessu repeatedly advised Defendant that she no longer wanted to be contacted, Defendant then began incessantly calling Ms. Tessu's cell phone. *Id.* at ¶ 31. Beginning on May 9, 2022, and continuing through January 2023, Defendant called and left at least 26 prerecorded voicemail messages on Ms. Tessu's cell phone. *Id.* at ¶ 32. Each of the voicemails left a recording about reordering medical supplies. *Id.*

Ms. Tessu found the communications from Defendant to be annoying and harassing. *Id.* at ¶ 35. Defendant's communications violated Ms. Tessu's right to be left alone and caused her to waste time addressing and/or responding to the unwanted calls and texts. *Id.* at ¶ 36. Ms. Tessu then filed suit. *Id. passim.*

Ms. Tessu's lawsuit seeks recourse from Defendant under Section 227(b) and Section 227(c) of the TCPA. *Id. passim.* As to the Section 227(c) count, Ms. Tessu alleges Defendant violated the TCPA by contacting her after she repeatedly requested that Defendant stop contacting her. *Id.* at ¶¶ 52-60. More specifically, Defendant violated a regulation promulgated under Section 227(c) of the TCPA, 47 C.F.R. § 64.1200(d), when Defendant failed to place Ms. Tessu on its internal do-not-call list after she requested that communications from Defendant stop. *Id.* at ¶¶ 54-56. Defendant's motion to dismiss followed. Dkt. 18, 19.

**LEGAL STANDARD**

Defendant has moved to dismiss the Section 227(c) (Count I) of Ms. Tessu's complaint pursuant to Rule 12(b)(6).[1] The Court is well-aware of the applicable legal standard when considering a Rule 12(b)(6) motion to dismiss, which was accurately recited by Defendant. Dkt. 19, pp. 2-3. Ultimately, the sole issue in Defendant's motion is not an issue pertaining to the sufficiency of Ms. Tessu's pleadings, but a pure legal issue for the Court to decide. The sole question to be answered by this Court is, "Do the TCPA's DNC protections for 'residential telephone subscribers' include cell phone users?" Consistent with the language of the TCPA, the intent of the TCPA to prevent unwanted telemarketing communications, the language of FCC regulations, multiple decisions from this Court, and decisions from an overwhelming majority of courts, the answer to this question is an unequivocal, "yes."

**ARGUMENT**

Defendant's motion to dismiss asks this Court to take the extreme step of holding that cell phones are not entitled to the TCPA's DNC protections. Such a ruling would: (1) contradict the language of the TCPA; (2) contradict the TCPA's purpose of protecting consumers from unwanted telemarketing communications; (3) contradict the plain language of FCC regulations; (4) reverse prior rulings from this Court recognizing that cell phones are entitled to the TCPA's DNC protections; (5) contradict the overwhelming number of courts holding that cell phones are entitled to such protections; and, (6) require this Court to act contrary to the Hobbs Act by effectively reversing the FCC's regulations.

---

[1] Ms. Tessu also brings a claim under Section 227(b) of the TCPA pertaining to Defendant impermissibly placing prerecorded voice calls to her cell phone (Count II). Dkt. 1, ¶¶ 32, 39, 44, 61-69. Defendant does not seek dismissal of Count II. *See* Dkt. 18, 19.

The law is well-established. The TCPA's DNC protections apply to cell phones because a "residential telephone subscriber" can include a cell phone user. This Court should not adopt the extreme position for which Defendant advocates.  Defendant's motion to dismiss should be denied.

**I.     The plain language of the TCPA and the fundamental purpose of the TCPA support the fact that a cell phone user can be a "residential telephone subscriber."**

**A.     The plain language of the TCPA makes clear that a "residential telephone subscriber" can be a cell phone user.**

The plain language of the TCPA establishes that the DNC protections for "residential telephone subscribers" includes calls placed to cell phones. Section 227(c) of the TCPA prohibits the placing of "more than one telephone call within any 12 month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Ms. Tessu alleges that she received more than one text message in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200(d) when Defendant continued to send her text messages after she replied "stop." Dkt. 1, ¶¶ 15-28, 39, 44, 54-56, 58-60. Defendant does not dispute that Section 64.1200(d) is a regulation prescribed under Section 227(c). *See* Dkt. 19 *passim*.[2] Critically here, Section 64.1200(d) applies to "residential telephone subscribers." 47 C.F.R. § 64.1200(d).

The plain and ordinary meaning of  the term "residential telephone subscriber" includes cell phone users. The TCPA itself does not define the term "residential telephone subscriber" or

---

[2] *See Worsham v. Discount Power, Inc.*, 2021 WL 5742382, at *4 (D. Md. Dec. 1, 2021) (Section 64.1200(d) is a regulation promulgated under Section 227(c)); *Charvat v. NMP, LLC*, 656 F.3d 440, 443-44, 448 (6th Cir. 2011) (same); *Robison v. 7PN, LLC*, 569 F.Supp.3d 1175, 1184 (D. Utah 2021) (same); *Rosenburg v. LoanDepot.com LLC*; 435 F.Supp.3d 308, 324 (D. Mass. 2020) (same); *Persichetti v. T-Mobile USA, Inc.*, 479 F.Supp.3d 1333, 1338-39 (D. Ga. 2020) (same); *Sorsby v. TruGreen Ltd. P'ship*, 2020 WL 7641288, at *4-5 (N.D. Ill. Dec. 23, 2020) (same); *Smith v. Truman Road Dev., LLC*, 2020 WL 2044730, at *13 (W.D. Mo. Apr. 28, 2020) (same).

its component parts. The court must therefore give the term its plain and ordinary meaning. *See generally Olsen v. Neese*, 2022 WL 17404968, at *3 (D. Md. Dec. 1, 2022). The word "residential" means "used a residence **or by residents**."[3] Merriam-Webster, Inc., "Residential" *available at* https://www.merriam-webster.com/dictionary/residential (last visited May 29, 2023). "Telephone" means "an instrument for reproducing sounds at a distance." Merriam-Webster, Inc., "Telephone" *available at* https://www.merriam-webster.com/dictionary/telephone (last visited May 29, 2023). A "subscriber" is one who "consent[s] . . . to something written by signing." Merriam-Webster, Inc., "Subscribe" *available at* https://www.merriam-webster.com/dictionary/subscriber (last visited May 29, 2023). When put together, a "residential telephone subscriber" is a person/resident who signs up for telephone service. The ordinary meaning of "residential telephone subscriber" therefore encompasses cell phones as a cell phone is undoubtedly a "telephone" because it is an instrument that reproduces sounds at a distance.

*Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722 (D. Mass. Feb. 3, 2022) lends support to this interpretation. The defendant in *Mantha*, like Defendant here, argued that the DNC protections did not apply to cell phones because a "residential telephone subscriber" cannot include cell phones. *Id.* at * 3. The *Mantha* court soundly rejected the defendant's argument, holding:

> Congress did not expressly define [the] term ['residential telephone subscriber']. . . . The word 'residential' is defined as 'used as a residence or by residents' with 'residence' being defined as 'the act or fact of dwelling in a place for some time,' and resident as 'living in a place for some length of time.' (citing Merriam-Webster Dictionary).

> Notably, the term describes certain attributes – residential, telephone and subscriber. This stands in contrast with other terms used in the statute which are by their nature are technical – 'telephone facsimile machine' or 'cellular telephone service' for example. (citing Section 227(d)(2) and Section 227(b)(2)(c)). **Nothing in the text of the statute at issue here exclusively prevents a 'residential**

---

[3] Where quotations are emphasized throughout this brief, emphasis has been added, unless otherwise noted.

> **telephone subscriber' from including a wireless or cellular telephone number. For these reasons, QuoteWizard's contention that the statute divides cellular phones and residential phones into two discrete and exclusive worlds is unpersuasive; it simply runs counter to the text enacted by Congress. Instead, the Court determines that 'residential telephone subscriber' is a functional term not tethered to a particular technology; it encompasses those telephone services fitting the ordinary meaning of that term. Indeed, the technical language cited by QuoteWizard demonstrates Congress understood how to use such language and intentionally eschewed technical language such as 'landline' and opted for a functional term of 'residential telephone subscriber in (c)(1).**

*Id.* at *3-4. The *Mantha* court's sound reasoning applies with equal force here.

Defendant, however, makes the same mistake as the defendant in *Mantha* - it conflates the type of technology used to place a call (*i.e.*, wireline versus wireless), with the type of subscriber to whom calls are placed (*i.e.*, a business subscriber versus a residential subscriber). While Defendant posits its motion as a beacon of "unambiguous" statutory construction, like the defendant in *Mantha*, Defendant here adds language to the statute and regulations by arguing that Section 227(c) and 47 C.F.R. § 64.1200(d) apply only to residential "landlines." Dkt. 19, pp. 1, 3. Section 227(c) and Section 64.1200(d), however, do not use the technology-based term "landline." *See* 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d) *passim*. Moreover, while applicable to only faxes, the TCPA's definition of the term "established business relationship" further highlights that the relevant distinction is the type of subscriber, not the type of technology used to place the call. The definition of "established business relationship" includes:

> a relationship between a person or entity and a **business subscriber** subject to the same terms applicable under such a section to a relationship between a person or entity and a **residential subscriber.**

47 U.S.C. § 227(a)(2)(A). Congress pointedly distinguished between the type of subscriber contacted and the type of technology used to place the call. This highlights Congress's recognition that the relevant distinction here is between the type of subscriber called, not the type of technology

used to place the call.[4] In other words, a "residential telephone subscriber" is not "tethered" to the type of technology used to place the call.

A litany of courts besides *Mantha* have also recognized that the type of subscriber, not the type of technology used to place the calls, is the relevant distinction in determining whether one is a "residential telephone subscriber." *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223-26 (9th Cir. 2022) (holding that a cell phone "used for both business and personal purposes can be a 'residential' phone" under Section 227(c)); *Noviello v. Holloway Funding Group*, 2023 WL 128395, at *5-6 (N.D. Tex. Jan. 9, 2023) (denying summary judgment on a Section 227(c) claim because a reasonable juror could find the plaintiff's cell phone was used for residential as opposed to business purposes); *Escano v. RCI LLC*, 2022 WL 1751273, at *16 (D.N.M. Nov. 28, 2022) (denying motion to dismiss because it is plausible the plaintiff's cell phone was used for residential, rather than business purposes); *Smith v. Truman Road Dev.*, 2020 WL 2044730, at *12 (W.D. Mo. Apr. 28, 2020) (finding that "there is a dispute of fact regarding whether [plaintiff's] use of his cell phone qualifies him as a 'residential telephone subscriber' or whether it is a business line."); *Blevins v. Premium Merch. Funding*, 2018 WL 5303973, at * 2-3 (S.D. Ohio Oct. 25, 2018) (denying judgment on the pleadings in on a Section 227(c) claim regarding text messages because cell phones can be used for business and residential purposes).

Finally, while Defendant correctly notes that the TCPA distinguishes between wireline and wireless calls (Dkt. 19, pp. 4-5), that distinction only further supports that a "residential telephone subscriber" can include a cell phone user. The TCPA's "automated telephone equipment" provisions highlight the distinction in language used in the TCPA when distinguishing between

---

[4] The FCC also recognizes this distinction. *See infra* Section II.A.

wireline and wireless calls. For example, when discussing wireline calls, the TCPA references "any emergency **telephone line**"  and "the **telephone line** of any guest room or patient room of a hospital . . . . ." 47 U.S.C. § 227(b)(1)(A)(i)-(ii). On the other hand, when discussing wireless calls the TCPA does not use the term "line" but simply references "any telephone **number**" that is "assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii) (each of these technologies are wireless). In other words, when the TCPA addresses wireline calls as opposed to wireless calls, the statute expressly uses the term "telephone line." *See also* 47 U.S.C. § 227(b)(1)(B) ("to initiate any telephone call to any residential **telephone line** using an artificial or prerecorded voice.") When addressing wireless calls, the TCPA does not use the phrase "line." This makes perfect sense as wireless calls by their very definition do not use a "line."

The distinction between wireline and wireless calls is important when considering the language of Section 227(c). Section 227(c) provides that the purpose of the section is to "protect residential telephone subscribers privacy rights." 47 U.S.C. § 227(c)(1). This section does not state that protections apply to "residential telephone **line** subscribers" but simply "residential telephone subscribers." Similarly, Section 227(c)(3) also does not use the phrase "line" and provides that the database for the National Do-Not-Call registry allows for a compilation of "a list of telephone **numbers** of residential subscribers." 47 U.S.C. § 227(c)(3).

Simply put, the plain language of the TCPA supports that "residential telephone subscribers" can include cell phone users.

**B.**     **The TCPA's fundamental purpose of protecting consumers from unwanted telemarketing communications is served by including cell phone users as "residential telephone subscribers."**

Similar to Senator Pressler's words on the Senate floor, this Court has recognized that "the TCPA was enacted to protect consumers from intrusive, nuisance calls from telemarketers." *Worsham v. Direct Energy Servs., LLC*, 2021 WL 948819, at *3 (D. Md. Mar. 12, 2021) (Gallagher, J.).

The TCPA is construed to be a "remedial scheme" with a "remedial purpose" that "affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650, 654, 656 (4th Cir. 2019). As such, the TCPA should be "liberally construed" and interpreted "in a manner tending to discourage attempted evasions by wrongdoers." *Hossfield v. Gov't Emps. Ins. Co.*, 88 F.Supp.3d 504, 509 n. 9 (D. Md. 2015) (citing *Scarbrough v. Atl. Coast Line R.R. Co.*, 178 F.2d 253, 258 (4th Cir. 1949 (discussing interpretation of remedial statutes)).

This is a quintessential case of a consumer who "despite efforts to avoid" receiving telemarketing communications from Defendant, "suffered an intrusion upon" her domestic peace. Here, despite Ms. Tessu repeatedly requesting that Defendant stop communicating with her, and despite Defendant repeatedly promising it would honor Ms. Tessu's requests, Defendant continued to harass Defendant on her cell phone. The Fourth Circuit has cautioned against not interpreting the TCPA in a manner that undercuts consumers' protections:

> It would be dispiriting beyond belief if courts defeated Congress' obvious attempt to vindicate the public interest with interpretations that ignored the purpose, text, and structure of this Act at the behest of those whose abusive practices the legislative branch had meant to curb.

*Krakauer*, 925 F.3d at 663. Likewise, applying the same principles and construing the TCPA in a manner that protects consumers from unwanted calls, the Third Circuit concluded that consent can

11

be revoked despite congressional silence on the issue. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270 (3d Cir. 2013) ("In light of the TCPA's purpose, any silence in the statute as to the right of revocation should be construed in favor of consumers.").

As to the inclusion of wireless phone users among residential subscribers, the FCC also considered the purpose of the TCPA: "we believe it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections." *In re Rules and Regulations Implementing the Tel. Consumer Protection Act of* 1991, 18 F.C.C. Rcd. 14014, 14148 (2003) ("2003 FCC Order"). Despite the purpose and intent of the TCPA, Defendant advocates taking a position which abrogates the 2003 FCC Order and eliminates the privacy protections the TCPA afforded to consumers.

To adopt Defendant's position would undermine the purpose of the TCPA and encourage further invasions of consumer privacy. In an era in which consumer privacy is eroding, and in which we are increasingly connected to our cell phones, it would be deeply concerning for the Court to invalidate the TCPA's privacy protections based on a rigid and narrow reading of the term "residential telephone subscriber."

**II.     The plain language of the FCC's regulations also make clear that a cell phone user can be a "residential telephone subscriber."**

   **A.     The TCPA's regulations make clear that a cell phone user can be a "residential telephone subscriber."**

Congress did not limit the FCC's rulemaking authority regarding DNC protections to "wireline" subscribers as Defendant posits, but to "residential telephone subscribers." *See* 47 U.S.C. § 227(c)(1). Moreover, Congress' enactment of the "Do-Not-Call Implementation Act" mandated that the FCC "issue a final rule . . . under the Telephone Consumer Protection Act" regarding the do-not-call regulations. 15 U.S.C. § 6153 (2003).

The FCC promulgated regulations regarding the TCPA's do-not-call rules in accordance with Congress' directive.  Specifically, the FCC's regulations provide that it is a violation of the TCPA for a company to place calls to a "residential telephone subscriber" who has requested to not receive such calls. 47 C.F.R. § 64.1200(d)(3). The regulations unequivocally recognize that cell phone users are entitled to these protections:

> The rules set forth in paragraph (c) and (d) of this section **are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers** to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'

47 C.F.R. § 64.1200(e). Indeed, the FCC's 2003 order "presumed" that cell phone users were "residential subscribers." *2003 FCC Order*, FCC Rcd. at 14038-14039. In applying the TCPA's DNC protections to cell phones, one court held that a defendant had "no good answer to the plain language of the regulation." *Clemons v. Bradford O'Neil Agency, LLC*, 2021 WL 6062491, at *3 (E.D. Mo. Dec. 22, 2021). Here too, Defendant has no good answer to the plain language of Section 64.1200(e). The only answer Defendant provides is that the FCC exceeded its authority in adopting this rule. Dkt. 19, p. 6 n. 2. However, as set forth *infra*, the Hobbs Act precludes this Court from invalidating the FCC's rule.

**B.    The plain language of other FCC regulations make clear that the relevant distinction is between a business and residential subscriber, not between a wireline and wireless telephone user.**

The plain language of other FCC regulations make clear that the relevant inquiry is the type of subscriber to whom calls are placed (*i.e.*, a business subscriber versus a residential subscriber), not the type of technology used to place a call (*i.e.*, wireline versus wireless). The plain language of other FCC regulations make this clear. For example, other FCC regulations define a "residential

subscriber" as a "subscriber to a telephone exchange service[5] that is **not a business subscriber**." 47 C.F.R. § 64.2305(d).[6] Multiple courts have recently recognized this distinction in recognizing that the TCPA's DNC protections apply to cell phones. *See Kemen v. Cincinnati Bell Tel. Co. LLC*, 2023 WL 361136, at *5 (S.D. Ohio Jan. 23, 2023); *Rose v. New TSI Holdings, Inc.*, 2022 WL 912967, at *2 (S.D.N.Y. Mar. 28, 2022).

Simply put, the FCC's regulations make clear that cell phones are "residential telephone subscribers" and are entitled to the TCPA's regulations.

### C. Congress has effectively adopted the FCC's definition of "residential telephone subscriber" to include cell phone users.

Moreover, Congress is also presumed to have adopted the FCC's rules and regulations applying the TCPA's DNC protections apply to cell phones. "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Slatin v. Stanford Research Inst.*, 590 F.2d 1292, 1293 (4th Cir. 1979); *see also Stone v. I.N.S.*, 115 S. Ct. 1537, 1546 (1995). After the FCC issued its rules and regulations in 2003 providing that cell phones are entitled to the TCPA's DNC protections, Congress amended the TCPA not once, but **four times**.[7] This Court may therefore "assume . . .

---

[5] Wireless carriers provide "telephone exchange service." *See Iowa Network Servs., Inc. v. Qwest Corp.*, 385 F.Supp.2d 850, 880 n. 40 (S.D. Iowa 2005) *aff'd*, 466 F.3d 1091 (8th Cir. 2006) (citing *In the Matter of Tony Chauncey d/b/a Tony Chauncey Prods.*, 11 F.C.C. Rcd. 1029, 1035-46 (1995))

[6] The FCC also separately defines "business subscriber" as a "subscriber to telephone exchange service for businesses." 47 C.F.R. § 64.2305(b).

[7] Pub. L. No. 109-21 (July 9, 2005); Pub. L. No. 111-331 (Dec. 22, 2010); Pub. L. No. 114-74 (Nov. 2, 2015); Pub. L. No. 116-105 (December 30, 2019).

that Congress intended to retain the agency's interpretation of the prior version of the statute." *West Virginia CWP Fund v. Bender*, 782 F.3d 129, 140 (4th Cir. 2015).[8]

Congress affirmatively authorized the FCC to implement the do-not-call rules and amended the statute four times without any indication the FCC had overstepped the authority it was granted. While Defendant may believe the FCC overstepped the authority afforded by Congress, through over 20 years of legislative acquiescence, Congress simply disagrees. There is simply no reason to conclude that Congress wanted a "residential subscriber" to exclude cell phone users.

**III.    This Court and the vast majority of courts across the country hold that a cell phone user can be a "residential telephone subscriber."**

**A.      This Court has repeatedly held that a cell phone user can be a "residential telephone subscriber" under the TCPA.**

Defendant conveniently neglects to mention that this Court has repeatedly recognized that cell phones are entitled to the TCPA's DNC protections. *See Boger v. Citrix Sys., Inc.*, 2020 WL 1033566 (D. Md. Mar. 3, 2020) (Xinis, J.); *Worsham v. Travel Options, Inc.*, 2016 WL 4592373 (D. Md. Sept. 2, 2016) (Bredar, J.) *aff'd* 678 Fed. App'x 165 (4th Cir. 2017).[9] The plaintiff in *Boger*, similar to Plaintiff here, brought a TCPA "do not call claim" for calls placed to his cell phone. *Id.* at *1, 4. The defendant in *Boger*, also like Defendant here, argued that the complaint should be dismissed because plaintiff could not be a "residential telephone subscriber" since the calls were placed to his cell phone. *Id.* at *4. The *Boger* court denied the motion to dismiss, holding:

---

[8] As discussed *infra* the FCC's 2003 Order is a "legislative rule" rather than an "interpretive rule." However, even if the Order is "interpretive" this is another reason why the TCPA's DNC protections should apply to cell phones.

[9] *See also Worsham v. Direct Energy Servs.*, 2021 WL 948819, at *3 (D. Md. Mar. 12, 2021) (Gallagher, J.) (Noting that the TCPA prohibits "calling a cell phone or residential telephone number listed on the national DNC registry, § 227(c)").

[Defendant] maintains that because the Complaint does not allege [plaintiff] had received calls as a 'residential telephone subscriber,' as required by 47 C.F.R. § 64.1200(d), the claim must fail. The Court disagrees.

47 C.F.R. § 64.1200(d) states: 'No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. **Although 47 C.F.R. § 64.1200(d) refers to a 'residential telephone subscriber,' section 64.1200(e) expressly makes those regulations "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers....'** *See also In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 167 (F.C.C. June 26, 2003) ('[W]e conclude that these rules apply to calls made to wireless telephone numbers ... wireless subscribers should be afforded the same protections as wireline subscribers.'). Viewed in the light most favorable to plaintiff, the Complaint alleges a violation not only of 47 C.F.R. §. 64.1200(d), but also 47 C.F.R. § 64.1200(e).

. . . **[T]he Complaint does not foreclose that [plaintiff's] cellphone functioned as a residential telephone number for purposes of the statute.**

*Id.*

The *Worsham* court also held that the TCPA's DNC protections apply to cell phones. In granting judgment for the plaintiff, the *Worsham* court held:

In § 64.1200(c), the FCC prohibited the initiation of any telephone solicitation to a residential telephone subscriber who has registered his phone number on the national DNC registry. Further, in § 64.1200(e), the FCC applied the prohibition in § 64.1200(c) to wireless telephone numbers. . . . [Plaintiff] has alleged that his cellular telephone number has been listed on the DNC registry since 2006, well before the four calls [he received]. . . . Those allegations are sufficient to establish [Plaintiff's] entitlement to statutory damages under the TCPA . . . .

*Worsham*, 2016 WL 4592373, at *6. Like the plaintiff in *Worsham*, Plaintiff here also alleges a claim under Section 227(c) of the TCPA for improper calls placed to her cell phone.

There is simply no compelling reason why this Court should deviate from its prior rulings in *Boger* and *Worsham*. Moreover, an overwhelming majority of courts hold that the TCPA's DNC

16

protections apply to cell phone users because cell phone users can be "residential telephone subscribers."

**B.    The overwhelming majority of courts across the country also hold that a cell phone user can be a "residential telephone subscriber" under the TCPA.**

Like the holdings of this Court, an overwhelming majority of courts nationwide also hold that the TCPA's do-not-call regulations apply to cell phones. *Chennette*, 50 F.4th at 1223-26; *see also Barton v. JMS Assoc. Mktg., LLC*, 2023 WL 2009925, at *2 (9th Cir. Feb. 15, 2023) (affirming default judgment entered for plaintiff on a Section 227(c) do-not-call claim for calls placed to plaintiff's cell phone); *Atkinson v. Choice Home Warranty*, 2023 WL 166168, at *4-5 (D.N.J. Jan. 11, 2023); *Noviello v. Holloway Funding Group*, 2023 WL 128395, at *5-6 (N.D. Tex. Jan. 9. 2023); *Long v. Cat Exteriors*, 2022 WL 17744052, at *3-4 (W.D. Tex. Dec. 15, 2022); *Escano v. RCI LLC*, 2022 WL 17251273, at *16 (D.N.M. Nov. 28, 2022); *Blalack v. RentBeforeOwning.com*, 2022 WL 7320045, at *2-4 (C.D. Cal. Oct. 11, 2022); *Ewing v. CSOLAR*, 2022 WL 4449326, at *3-4 (S.D. Cal. Sept. 22, 2022); *Spurlark v. Dimension Serv. Corp.*, 2022 WL 2528098, at *4 (S.D. Ohio July 7, 2022); *Gill v. Align Tech.*, 2022 WL 1540016, at *3 (E.D. Wisc. May 16, 2022); *Miholich v. Senior Life Ins. Co.*, 2022 WL 1505865, at *3-4 (S.D. Cal. May 12, 2022); *Rose v. New TSI Holdings, Inc.*, 2022 WL 912967, at *2 (S.D.N.Y. Mar. 28, 2022); *Mantha v. Quotewizard.com*, LLC, 2022 WL 325722, at *15-16 (D. Mass. Feb. 3, 2022); *Barton v. Temescal Wellness, LLC,* 525 F. Supp. 3d 195, 202 (D. Mass. 2021); *Boardman v. Green Dot Corp.*, 2021 WL 3699856, at *2 (W.D.N.C. Aug. 19, 2021); *see Fischman v. MediaStratX, LLC*, 2021 WL 3559639, at *1, 3-4 (E.D.N.C. Aug. 10, 2021); *Dudley v. Vision Solar LLC*, 2021 WL 3077557, at *5 (E.D. Pa. July 21, 2021); *McDermet v. DirecTV, LLC*, 2021 WL 217336, at *12 (D. Mass. Jan. 21, 2021); *Strange v. ABC Co.,* 2021 WL 798870, at *3-4 (W.D. La. Mar. 1, 2021); *Sagar v. Kelly*

*Auto. Group*, 2021 WL 5567408, at *5-6 (D. Mass. Nov. 29, 2021); *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1120 (W.D. Mo. 2020); *Mestas v. CHW Group Inc.,* 508 F. Supp. 3d 1011, 1027-28 at *34 (D.N.M. 2020); *Valdes v. Century 21 Real Est., LLC*, 2019 WL 5388162, at *3 (D.N.J. Oct. 22, 2019); *Izor v. Abacus Data Sys., Inc.*, 2019 WL 3555110, at *2 (N.D. Cal. Aug. 5, 2019).[10]

Rather than addressing any of the cases from this Court or any of the above-referenced litany of cases, Defendant instead relies on three outlier decisions to support its position. *See Gaker v. Q3M Ins. Sols.*, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023); *Cunningham v. Politi*, 2019 WL 2519568 (E.D. Tex. Apr. 30, 2019); *Cunningham v. Sunshine Consulting Group, LLC*, 2018 WL 3496538 (M.D. Tenn. July 20, 2018). Not only are the only cases on which Defendant relies outlier decisions, each of these decisions are cases in which: (1) the magistrate judge's recommendations were never adopted (*Gaker*); and/or, (2) federal courts within the same state adopted the overwhelming majority view that cell phone users can be "residential telephone subscribers" (*Gaker* and both *Cunningham* cases).

*Gaker* was simply a magistrate judge's recommendation that was never adopted. *Gaker*, 2023 WL 2472649, at *1, 4. Rather, the *Gaker* court later entered judgment for the plaintiff pursuant to an accepted offer of judgment. *Gaker v. Q3M Ins. Sols.*, 2023 WL 2472649 (W.D.N.C. Apr. 26, 2023). The magistrate judge's recommendation in *Gaker* was simply incorrect. The magistrate's recommendation was premised in part on the idea that "cell phones do not present the same concerns as residential telephones" because "cell phones mobility and functionality to silence or decline calls alleviate the concerns with a home telephone. *Gaker*, 2023 WL 2472649, at *3.

---

[10] This is a non-exhaustive list of the courts holding that the TCPA's DNC protections apply to cell phones.

Notwithstanding the fact that the TCPA does not place an affirmative obligation on a consumer to silence their phone but on a business to first ensure they have permission to contact a consumer, unwanted calls to cell phones actually present **greater** privacy concerns than landline phones. Our phones are connected to us at home, work, and even while we sleep. Thus, contrary to the magistrate' recommendation, the right to be left alone that the TCPA protects is even more significant in today's era than when the TCPA was enacted.[11]

Moreover, the magistrate's recommendation in *Gaker* is an outlier recommendation, even within North Carolina federal courts. *See Boardman v. Green Dot Corp.*, 2021 WL 3699856, at *2-3 (W.D.N.C. Aug. 19, 2021) (denying motion to dismiss Section 227(c) count because "a cellphone may plausibly be alleged as residential for purposes of the TCPA."); *Fischman v. MediaStratX, LLC*, 2021 WL 3559639, at *1, 3-4 (E.D.N.C. Aug. 10, 2021) (recognizing a concrete injury where plaintiff alleged receiving telemarketing calls despite his cell phone number being registered on the Do-Not-Call Registry).

As for the *Cunningham* decision from Tennessee[12], another Tennessee federal district court held after *Cunningham* that a cell phone users can be "residential telephone subscribers." *Stevens-*

---

[11] The magistrate's recommendation also erroneously relied on a concurring opinion from the Eleventh Circuit in reaching its recommendation to disregard an FCC order. *Gaker*, 2023 WL 2472649, at *3 (*quoting Gorss Motels, Inc. v. Safemark Sys.*, 931 F.3d 1094, 1106 (11th Cir. 2019) (Pryor, J., concurring) The concurring opinion in *Gorss Motels* is not the law in the Eleventh Circuit. Rather, the law in the Eleventh Circuit is that, "In the Hobbs Act, 28 U.S.C. § 2342, Congress unambiguously deprived the federal district courts of jurisdiction to invalidate FCC orders by giving exclusive power of review to the courts of appeal. *Mais v. Gulf Coast Collection Bureau*, 768 F.3d 1110, 1113 (11th Cir. 2014).

[12] As one court aptly noted the *Cunningham* decision does not "even mention" Section 64.1200(e) and the cases that have considered the application of this section have "concluded that a cell phone user can qualify as a residential telephone subscriber" under Section 64.1200(c) and (d). *Clemons*, 2021 WL 6062491, at *3.

*Bratton v. TruGreen, Inc.*, 437 F. Supp.3d 648, 654-56 (W.D. Tenn. 2020). The *Stevens-Bratton* court held:

> Some courts have found that calls to cellular telephones, in part because of their inherent characteristics, categorically fail to satisfy the 'residential telephone subscriber' element of the relevant TCPA regulations . . . **The court does not agree with those cases.**
>
> . . . **Cellular telephones are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy. Cellular telephones can be used for residential purposes. The privacy interests they implicate are just as strong as wirelines, perhaps more so. A cellular telephone can satisfy the 'residential telephone subscriber' element of §64.1200(c) & (d).**

*Id.* at 655-56.[13]

The *Cunningham* decision from Texas is also an outlier decision within Texas federal district courts. Multiple federal courts in Texas held after *Cunningham* that a "residential telephone subscriber" can include cell phone users. *Noviello v. Holloway Funding Group*, 2023 WL 128395, at *5-6 (N.D. Tex. Jan. 9. 2023); *Long v. Cat Exteriors*, 2022 WL 17744052, at *3-4 (W.D. Tex. Dec. 15, 2022); *Hunsinger v. Alpha Cash Buyers, LLC*, 2022 WL 562761, at *2-3 (N.D. Tex. Feb. 24, 2022).

This Court and the overwhelming majority of courts around the country all hold that a cell phone user can be a "residential telephone subscriber" under Section 227(c) of the TCPA and the TCPA's corresponding regulations. This Court should rule consistently with its prior precedent and not adopt the outlier position argued for by Defendant.

---

[13] The *Stevens-Bratton* court dismissed the complaint because plaintiff failed to adequately allege she used the cell phone for residential purposes. *Stevens-Bratton*, 437 F.Supp.3d at 656. Defendant makes no similar argument here, but simply argues cell phones can never satisfy the "residential telephone subscriber" requirement.

**IV.     The Hobbs Act precludes this Court from invalidating the FCC's 2003 Order.**

**A.      The Hobbs Act precludes this Court from reviewing the validity of the FCC's order and regulations concerning the TCPA.**

After the "Do-Not-Call Implementation Act" was signed into law in 2003, in accordance with Congress' directives, the FCC issued rules concerning the TCPA's DNC protections. *See generally 2003 FCC Order*, 18 F.C.C. Rcd. 14014. The FCC unequivocally held that persons with wireless phone numbers were entitled to the TCPA's DNC protections – namely, the right to be placed on a company's internal do-not-call list upon request. *See id.* at 14037-38.

The 2003 FCC Order prescribed that cell phones were entitled to the TCPA's DNC protections. The FCC held that affording the TCPA DNC protections to cell phones would "further the objectives of the TCPA and the Do-Not-Call Act." *2003 FCC Order*, 18 F.C.C. Rcd. at 14037. Indeed, the FCC rejected the precise arguments raised by Defendant here:

> Nextel argues, however, that, because the "TCPA only authorizes the Commission to regulate solicitations to 'residential telephone subscribers,' wireless subscribers may not participate in the do-not-call list. Nextel states we should define 'residential subscribers' to mean 'telephone service used primarily for communications in the subscriber's residence.' . . .

> Nextel's definition of 'residential subscribers' is far too restrictive and inconsistent with the intent of section 227. . . . [H]ad Congress intended to exclude wireless subscribers from the benefits of the TCPA, it knew how to address wireless services or consumers explicitly.

*Id.* at 14038. Defendant, however, asks this Court to effectively invalidate the 2003 FCC Order and the corresponding regulation because it believes the FCC exceeded its authority in its order and regulations. Dkt. 19, p. 6 n. 2.

The Hobbs Act, however, deprives this Court of jurisdiction to take such an approach. The Hobbs Act grants the federal courts of appeal "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final orders of the [FCC] made reviewable

by section 402(a) of title 47." 28 U.S.C. § 2342(1). The Supreme Court recognizes that there are certain circumstances in which a district court may not be bound by an FCC order. An FCC order "**may** not be binding on a district court" if the order is an "interpretive rule" as opposed to a "legislative rule." *See PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055-56 (2019) ("we say 'may' because we do not definitively decide this issue here"); *see also Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96-97 (2015) (noting that legislative rules have the force and effect of law). In other words, the Supreme Court has declared that an FCC's order may be binding on a district court if the order is a "legislative rule."

This Court is bound to follow the FCC's 2003 Order and corresponding regulations because the order is a "legislative rule" rather than an "interpretive rule." Legislative rules derive from "an agency's exercise of delegated legislative power from Congress" and therefore have the "force and effect of law." *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 17-18 (D.C. Cir. 2019) (*quoting Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2122 (2016) and *Am. Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1109 (D.C. Cir. 1993)). If a rule is "legislative," the District Court must "abide by the jurisdictional mandate of the Hobbs Act." *See Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*, 2020 WL 2793954, at *15 (E.D. Pa. May 29, 2020).

The hallmark of legislative rules is that they "[expand] the footprint of a regulation by imposing new requirements, rather than simply interpreting the legal norms Congress or the agency itself has previously created . . . ." *Iowa League of Cities v. Envtl. Prot. Agency*, 711 F.3d 844, 873 (8th Cir. 2013). There are four critical factors in determining whether a rule is legislative: (1) "the language actually used by the agency", (2) "whether the agency published the rule in the Code of Federal Regulations", (3) "whether the agency has explicitly invoked its general

legislative authority", and, (4) whether the rule was issued through the notice-and-comment process. *Guedes*, 920 F.3d at 18 (internal quotations and citations omitted); *Perez*, 135 S. Ct. at 1203; *see also Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258, 263 (4th Cir. 2020) ("While agencies must follow formal notice and comment procedures to issue legislative rules, they need not do so to issue interpretive rules.").

The FCC's 2003 Order has all four of the hallmarks of a legislative rule. First, the language of the FCC's 2003 Order makes clear its rules are "expanding the footprint of a regulation by imposing new requirements" under the TCPA:

> In this Order, **we revise** the Current Telephone Consumer Protection Act (TCPA) rules and **adopt new rules** to provide consumers with several options for avoiding unwanted telephone solicitations. Specifically, **we establish** with the Federal Trade Commission (FTC) a national do-not-call registry for consumers who wish to avoid unwanted telemarketing calls. The national do-not-call registry **will supplement the current company specific do-not-call rules** for those consumers who wish to continue requesting that particular companies not call them. . . .
>
> It has not been over ten years since the Commission **adopted a broad set of rules that respond to Congress' directives** . . . . Many consumers who commented in this proceeding 'want something done' about unwanted solicitation calls, and the vast majority of them support the establishment of a national do-not-call registry. **Congress, too, has responded by enacting the Do-Not-Call Implementation Act** (Do-Not-Call Act), authorizing the establishment of a national do-not-call registry, and **directing this Commission to issue final rules** . . . .

*2003 FCC Order*, 18 F.C.C. Rcd. at 14017. Here, the FCC purposely expanded the footprint of the TCPA's regulations.

Second, the FCC published the new rules in the Code of Federal Regulations. Among the many rules published in the Code of Federal Regulations were 47 C.F.R. § 64.1200(d) and § 64.1200(e). *See* 68 Fed. Reg. 44177, 2003 WL 2173245 (effective July 25, 2003). Section 64.1200(d) provides that it may be a violation of the TCPA for a company to place calls to a "residential telephone subscriber" who has requested to no longer receive such calls. 47 C.F.R. §

64.1200(d)(3). Section 64.1200(e) provides that "[t]he rules set forth in paragraph (c) . . . of this section are applicable to any person or entity making telephone solicitations or telemarketing calls **to wireless telephone numbers** to the extent described in the [2003 FCC Order]." 47 C.F.R. § 64.1200(e).

Third, the FCC "explicitly invoked its general legislative authority" when enacting the Do-Not-Call Registry rules. After President George W. Bush signed the Do-Not-Call Act into law, the FCC declared:

> **Based on Congress's directives in the TCPA and the Do-Not-Call Act**, the substantial record developed in this proceeding, and on the Commission's own enforcement experience, we adopt these amended rules . . . .
>
> The Do-Not-Call Act also requires the FCC to issue a final rule in its ongoing TCPA proceeding within 180 days of enactment . . . . By this Order, **we are complying with Congress's directives** to issue final rules in our TCPA proceeding within 180 days of the Do-Not-Call's enactment. . . .
>
> . . . **Consistent with the mandate of Congress in the Do-Not-Call Act**, the national do-not-call rules that we establish in this order 'maximize consistency' with those of the FTC. The record clearly demonstrates widespread consumer dissatisfaction with the effectiveness of the current rules and network technologies available to protect consumers from unwanted telephone solicitations.

*2003 FCC Order*, 18 F.C.C. Rcd. at 14027, 14033 (emphasis added).  In short, the FCC repeatedly emphasized in its 2003 Order that its rules were implemented pursuant to Congress' mandate.

Finally, the FCC's rules were issued through the notice and comment process. The rules were issued only after the FCC sought extensive comments on a variety of matters, including, "whether to revisit the option of establishing a national do-not-call list and, if so, how such action might be taken in conjunction with the FTC's proposal to adopt a national do-not-call list . . . ." *Id.* at 14026.

The 2003 FCC Order has all the trappings of a "legislative rule." This Court should therefore provide substantial deference to the FCC's Order. As discussed in the next section, the

FCC's Order is not arbitrary or capricious and is consistent with the TCPA. The Court should therefore reject Defendant's suggestion that the Court disregard the 2003 FCC Order and the plain language of the FCC's regulations.

Defendant's sole retort to the order being a legislative rule is, without providing any substantive explanation, that Defendant "did not have an adequate prior opportunity to seek judicial review of the regulation." Dkt. 19, p. 8. Defendant appears to contend it did not have an adequate opportunity to seek review because the FCC's 2002 proposed rulemaking order "proposed rulemaking included only passing questions as whether wireless lines should be considered residential telephone numbers for TCPA purposes" and that these issues were "vague." *Id.* The FCC, however, was not vague on the rulemaking issues for which is sought comment – it could not have been clearer:

> In addition, we seek comment on whether the Commission's TCPA rules are sufficient to address any issues identified above [regarding telemarketing to wireless numbers, or whether any revisions are necessary. For example, **should wireless telephone numbers or a subset thereof be considered 'residential telephone subscribers' for the purposes of the Commission's rules on telephone solicitations.** If so, should there be any different rules that apply to solicitations to wireless telephone numbers than would already apply under section 64.1200(e). . . .

> . . . **We seek comment on the extent to which wireless subscribers may be considered 'residential' for purposes of the TCPA.**

*See In re: Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 F.C.C. Rcd. 17459, 17485, 17491 (Sep. 18, 2002).[14] Defendant simply offers no plausible explanation for why it had no opportunity to seek judicial review of the regulation.

---

[14] Notably, the FCC provided more time than usual for the public to comment on these issues. The FCC granted an extension of time to extend the comment period regarding the 2002 proposed rulemaking order. *See In re: Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 F.C.C. Rcd. 23658, 23659-60 (Sep. 18, 2002) (extending the comment period and noting that "it is not Commission policy to routinely grant extensions of time.")

**B.     The FCC's order and regulations should be adopted by this Court even if the Court determines the FCC's 2003 Order was an "interpretive rule" rather than a "legislative rule."**

If the Court believes Congress did not directly speak to the "precise question at issue" as to whether a "residential telephone subscriber" can include a cell phone user, then the Court must proceed to another analysis to determine the propriety of the FCC's rules. *See Rogers v. Kijakazi*, 62 F.4th 872, 879 (4th Cir. 2023); *Nat'l Elec. Mfrs. Ass'n v. Dep't of Energy*, 654 F.3d 496, 504 (4th Cir. 2011). That analysis is where "statutory language is susceptible to more precise definition and open to varying construction . . . the Court simply ensures that the interpreting agency's construction is reasonable." *Asher & Simons, P.A. v. j2 Global Canada, Inc.* 977 F.Supp.2d 544, 549 (D. Md. 2013) (quoting *United Seniors Ass'n, Inc. v. Soc. Sec. Admin.*, 423 F.3d 397, 403 (4th Cir. 2005)); *see also Rogers*, 62 F.4th at 879.

Notably, in conducting this analysis*,* the Court considers whether Congress provided an agency broad rule-making authority. *Rogers*, 62 F.4th at 879*.* If Congress provided broad authority, then the agency's rules must be given "controlling weight" if the rules are not "manifestly contrary to the statute." *Id.*

Congress provided the FCC broad rulemaking authority in regard to the TCPA. The TCPA provides that the FCC the authority to prescribe regulations and that such regulations may form the basis of a TCPA violation. 47 U.S.C. § 227(c)(5). Moreover, Congress mandated in the "Do-Not-Call Implementation Act" that the FCC "issue a final rule . . . under the Telephone Consumer Protection Act" regarding the Do-Not-Call regulations. 15 U.S.C. § 6153 (2003). As such, even if the FCC's regulations are considered "interpretive rules" (which they are not), they must be given controlling weight.

26

As discussed *infra*, the FCC's regulations providing that a cell phone user can be a "residential telephone subscriber" are not only reasonable, but accurate. Again, the regulations are consistent with the language of the TCPA and the legislative purpose of the TCPA. Further highlighting the reasonableness of the FCC's regulations is the fact that multiple states have also defined the term "residential telephone subscriber" or "residential subscriber" to include cell phones. 73 PENN. STAT. ANN. § 2242 (defining "residential telephone subscriber" to include "both wire line telephone service numbers and wireless telephone service numbers."); S.D. CODIFIED LAWS § 49-31-1(2) (defining "residential telephone subscriber" to include a person who has "cellular service"); MO. REV. STAT. § 407.1095(2) (defining "residential subscriber" to include a subscriber to "wireless service").

Defendant's sole retort is that the FCC acted beyond its authority because the TCPA's express mention of "cellular telephones" in Section 227(b) and omission of reference to cell phones in Section 227(c)'s protections of "residential telephone subscribers", can only mean Congress intended to exclude cell phones from the TCPA's DNC protections. Dkt. 19, p. 5.[15] This concept is referred to as the *expressio unius* canon.  However, the Fourth Circuit rejected the identical application of this canon as advanced by Defendant. *See Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*, 983 F.3d 671 (4th Cir. 2020).

In *Outdoor Amusement*, a group of employers challenged the Department of Homeland Security's authority to delegate rulemaking on H-2b visa employment to the Department of Labor where the statutory language of the Immigration and Nationalities Act was silent on the Department of Labor's ability to make rules on H-2b visas but explicitly delegated rulemaking to the Department of Labor in other sections of that statute. *Id.* The Fourth Circuit rejected the

---

[15] This argument also fails for the reasons set forth in Section I.A, *supra*.

employers' proposed application of the *expression unius* canon, and instead held that statutory silence is not a prohibition on agency rulemaking authority, but instead a delegation of rulemaking discretion to the agency:

> Employers counter with the *expressio unius* canon: because Congress chose Labor as the consulting agency and defined its role elsewhere in the INA, the fact that Congress did not do so here means Congress meant to preclude Labor from occupying a similar role for H-2B visas.

> These contentions fail for two reasons. First, the existence of unconstrained discretion under H-2B does nothing to imply that Labor could not be chosen for the same role it has elsewhere. The D.C. Circuit rejected a similar *expressio unius* argument where one part of a statute provided procedures for handling competing bids but another section was silent. *Cheney R. Co. v. ICC*, 902 F.2d 66, 68-69, 284 U.S. App. D.C. 101 (D.C. Cir. 1990). The court explained that '**the contrast between Congress's mandate in one context with its silence in another suggests not a prohibition but simply a decision not to mandate any solution in the second context, i.e., to leave the question to agency discretion.**'

*Id.* at 686. The *Outdoor Amusement* case only lends further support to the fact that the FCC's regulations are reasonable and consistent with the TCPA.

Ultimately, this Court should not contradict the FCC's clear and unequivocal recognition that a cell phone user can be a "residential telephone subscriber."

## CONCLUSION

Ultimately, consumers like Ms. Tessu remain fed up with the annoyance of unwanted telephone solicitations. This is precisely why the plain language of the TCPA, the plain language of FCC regulations, cases from this Court, and an overwhelming majority of courts across the country, unequivocally hold that a cell phone user can be a "residential telephone subscriber" and therefore entitled to invoke the TCPA's DNC protections. This Court should follow this abundance of sound reasoning and "give back to consumers the freedom to choose how their telephone are used" by recognizing that cell phones are entitled to the DNC protections. Defendant's motion should be denied.

**BUTSCH ROBERTS & ASSOCIATES LLC**

By: /s/ *Christopher E. Roberts*
Christopher E. Roberts (admitted *pro hac*)
231 South Bemiston Ave., Suite 260
Clayton, MO 63105
(314) 863-5700 (telephone)
(314) 863-5711 (fax)
croberts@butschroberts.com

**SANTONI, VOCCI & ORTEGA LLC**

Chelsea Ortega #19327
201 W. Padonia Road, Suite 101
Lutherville-Timonium, Maryland 21093
(443) 921-8161 (telephone)
(410) 525-5704 (fax)
cortega@svolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2023, a copy of the foregoing was submitted electronically via the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ *Christopher E. Roberts*