**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| RITA TESSU, individually and on behalf of all others similarly situated, | * | |
| | * | |
| | * | |
| *Plaintiff*s, | * | |
| | * | |
| v. | * | Civil Action No. SAG-23-0364 |
| | * | |
| ADAPTHEALTH, LLC d/b/a | * | |
| AMERICA'S HEALTHCARE AT HOME, | * | |
| | * | |
| *Defendant*. | * | |
| | *** | |

## MEMORANDUM OPINION

Plaintiff Rita Tessu ("Tessu") filed this prospective class action, alleging in Count I that Defendant AdaptHealth LLC d/b/a America's Healthcare at Home ("AdaptHealth") violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"), specifically Section 227(c)(5). AdaptHealth has filed a Motion to Dismiss Count I for failure to state a claim and an accompanying memorandum. ECF 18; ECF 19. Tessu filed an opposition, ECF 28, and AdaptHealth filed a reply, ECF 31. A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, AdaptHealth's motion shall be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, AdaptHealth is a medical equipment and respiratory therapy company transacting business nationwide. ECF 1 ¶¶ 8–10. AdaptHealth markets its products, in part, through text messages and prerecorded phone calls to its customers' cell phones. *Id.* ¶ 11. Tessu considers her cell phone to be her residential line and uses it for her personal matters. *Id.* ¶¶ 12–13. The cell phone account is in Tessu's name. *Id.* ¶ 14.

After receiving a marketing text message on her cell phone from AdaptHealth on April 12, 2022, Tessu replied "Stop" to express her desire not to receive additional messages. *Id.* ¶¶ 15–16.

AdaptHealth responded stating that Tessu was "unsubscribed from medical supply alerts" and that "[n]o more text messages will be sent." *Id.* ¶ 17. Nevertheless, Tessu received additional text messages from AdaptHealth on April 19, 2022, May 3, 2022, May 10, 2022, and May 17, 2022. *Id.* ¶¶ 18–21. She again replied, "Stop" on May 17, 2022 and received an identical message promising that the text messages would cease. *Id.* ¶¶ 22–23. However, the pattern repeated again into early June, 2022. *Id.* ¶¶ 24–28.

Beginning on May 9, 2022, continuing into January, 2023, AdaptHealth also called Tessu's cell phone repeatedly, leaving her at least 26 prerecorded voicemail messages. *Id.* ¶ 32. The prerecorded calls occurred despite Tessu's previous communication to AdaptHealth that she did not want to be contacted. *Id.* ¶ 31. The instant lawsuit ensued.

## II.   STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See In re Birmingham*, 846 F.3d at 92.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must

contain facts sufficient to "state a claim to relief that is plausible on its face." *Id*. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and

then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

## III.    DISCUSSION

Section 227(c) of the TCPA prohibits placing "more than one telephone call within any 12-month period by or on behalf of the same entity" to persons on the Do Not Call Registry. 47 U.S.C. § 227(c)(5). Relatedly, the "Do-Not-Call Implementation Act," enacted in 2003, mandated that the Federal Communications Commission ("FCC") "issue a final rule . . . under the Telephone Consumer Protection Act" regarding do-not call regulations. 15 U.S.C. § 6153 (2003). Later that year, the FCC issued an order promulgating several related rules. *In re Rules and Regulations Implementing the Telephone Consumer Prot. Act*., 18 FCC Red. 14014, 14037–38 (F.C.C. 2003) ("the 2003 FCC Order"). Its provisions were codified at 47 C.F.R. § 64.1200, which states, in relevant part, "No Person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). Another rule from the 2003 FCC Order was codified at 47 C.F.R. § 64.1200(e), making Section 227(c)'s prohibitions equally applicable to cellular telephones.

The parties dispute whether Tessu's cellphone qualifies for protection because Congress intended the Do-Not-Call Registry "to protect residential subscribers' privacy rights." 47 U.S.C. § 227(c)(1). AdaptHealth contends that a cell phone cannot be a residential telephone under the TCPA. Plaintiff argues that it can, citing the 2003 FCC Order.

While the TCPA itself contains certain provisions applicable to residential phone lines and cellular phone lines in its different subsections, when adopting the 2003 FCC Order, the FCC expressly opined that wireless or cellular numbers should be included in the national do-not-call

4

registry order to further the "overall intent" of the TCPA.[1] 2003 FCC Order at 14037–38 ("We conclude that the national database should allow for the registration of wireless telephone numbers, and that such action will better further the objectives of the TCPA and the Do-Not-Call Act," *id.* at 14038).

To ascertain what effect the 2003 FCC Order's provisos should have on this Court's analysis, this Court is guided by the analysis set forth by the Supreme Court in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S.Ct. 2051, 2055–56 (2019) (internal quotations omitted), where it considered a subsequent FCC order:

> First, what is the legal nature of the 2006 FCC Order? In particular, is it the equivalent of a "legislative rule," which is "'issued by an agency pursuant to statutory authority'" and has the "'force and effect of law'"? Or is it instead the equivalent of an "interpretive rule," which simply "'advis[es] the public of the agency's construction of the statutes and rules which it administers'" and lacks "'the force and effect of law'"?
>
> If the relevant portion of the 2006 Order is the equivalent of an "interpretive rule," it may not be binding on a district court, and a district court therefore may not be required to adhere to it. That may be so regardless of whether a court of appeals could have "determin[ed]" during the 60-day review period that the Order is "vali[d]" and consequently could have decided not to "enjoin, set aside, [or] suspend" it. 28 U.S.C. § 2342. And that may be so no matter what degree of weight the district court ultimately gives the FCC's interpretation of the statute under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We say "may" because we do not definitively resolve these issues here.
>
> Second, and in any event, did [the party challenging the order] have a "prior" and "adequate" opportunity to seek judicial review of the Order? 5 U.S.C. § 703. The Administrative Procedure Act provides that "agency action is subject to judicial

---

[1] Contrary to AdaptHealth's contention, this Court does not read the TCPA to draw an express distinction between a residential telephone and a cellular telephone. It simply makes reference at different points to each, but does not provide that one could not be subsumed within the other. *See Mantha v. Quote Wizard.com, LLC*, Civ. No. 19-12235-LTS, 2022 WL 325722, at *3–4 (D. Mass. Feb. 3, 2022) ("Nothing in the text of the statute at issue here exclusively prevents a 'residential telephone subscriber' from including a wireless or cellular telephone number. . . . Instead, the Court determines that 'residential telephone subscriber' is a functional term not tethered to a particular technology.")

review in civil or criminal proceedings for judicial enforcement" except "to the extent that [a] prior, adequate, and exclusive opportunity for judicial review is provided by law." *Ibid.* (emphasis added). We believe it important to determine whether the Hobbs Act's exclusive-review provision, which requires certain challenges to FCC final orders to be brought in a court of appeals "within 60 days after" the entry of the order in question, 28 U.S.C. § 2344, afforded [the challenging party] a "prior" and "adequate" opportunity for judicial review of the Order. If the answer is "no," it may be that the Administrative Procedure Act permits [the challenging party] to challenge the validity of the Order in this enforcement proceeding even if the Order is deemed a "legislative" rule rather than an "interpretive" rule. We again say "may" because we do not definitively decide this issue here.

Essentially, if the rules set forth in the 2003 FCC Order are legislative in nature, then they have "the force and effect of law." *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 17–18 (D.C. Cir. 2019) (internal quotations omitted.). And if they are legislative rules, the Administrative Orders Review Act ("the Hobbs Act") affords the United States Courts of Appeals exclusive jurisdiction to "determine the validity of . . . all final orders of the Federal Communications Commission." 28 U.S.C. § 2342(a). In other words, AdaptHealth would be unable to challenge the validity of the 2003 FCC Order through this litigation, unless it were able to establish that it had been deprived of a prior and adequate opportunity to seek judicial review of the order under the Hobbs Act's provisions. *Cf. Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015) ("If the Hobbs Act applies, a district court must afford FCC final orders deference and may only consider whether the alleged action violates FCC rules or regulations.").

Turning to the first question of whether the FCC Order is interpretative or legislative, the D.C. Circuit has wisely noted, "[t]he difficulty with the distinction is that almost every rule may seem to do both." *Am. Min. Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1110 (D.C. Cir. 1993). In general, interpretive rules are those "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Perez v. Mortg. Bankers*

*Ass'n*, 575 U.S. 92, 96–97 (2015). In contrast, "[l]egislative rules result from an agency's exercise of 'delegated legislative power' from Congress," and therefore carry the "force and effect of law." *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 18 (D.C. Cir.), *judgment entered*, 762 F. App'x 7 (D.C. Cir. 2019). As

The D.C. Circuit has considered various factors when determining the nature of an agency's action, including: (1) "the language actually used by the agency;" (2) "whether the agency published the rule in the Code of Federal Regulations;" (3) whether the agency has explicitly invoked its general legislative authority" and (4) whether the rule was issued using the notice-and-comment process. *Guedes,* 920 F.3d at 18; *Perez,* 135 S. Ct. at 1203. For example, the Fourth Circuit recently determined that a 2006 FCC order was interpretive in nature in part because the FCC did not follow its formal notice and comment procedures. *See Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258, 263 (4th Cir. 2020) ("While agencies must follow formal notice and comment procedures to issue legislative rules, they need not do so to issue interpretive rules.").

To the contrary, the 2003 FCC Order and the process used to enact it suggest that the rules contained therein, including the pertinent rule at § 64.1200(e), are legislative. The 2003 FCC Order itself specifies that its purpose is to "adopt new rules to provide consumers with several options for avoiding unwanted telephone solicitations" and notes Congress's enactment of "the Do-Not-Call Implementation Act (Do-Not-Call Act), authorizing the establishment of a national do-not-call registry, and directing this Commission to issue final rules." 2003 FCC Order, 18 F.C.C. Rcd. at 14017. In other words, the FCC intentionally elucidated and expanded the TCPA's regulations at Congress's behest. The FCC published the new rules in the Code of Federal Regulations, at 47 C.F.R. §§ 64.1200(d) and 64.1200(e). The FCC also "explicitly invoked its general legislative

authority" when enacting the 2003 FCC Order, stating multiple times that it was acting based on Congress's directives and mandate. 2003 FCC Order, 18 F.C.C. Rcd. at 14027, 14033. And the FCC used its formal notice and comment process to enact the rules, seeking comment on the establishment of a national do-not-call list. *Id.* at 14026. This Court therefore finds that the 2003 FCC Order and its relevant contents are legislative, not interpretive. *See Correll v. Iconic Mortgage Corp.*, Civ. No. 20-24858-CIV-ALTONAGA/Torres, 2021 WL 5014122 (S. D. Fl. Feb. 8, 2021) (assessing the same issue and determining that the rule is legislative, not interpretive).

Looking to the second issue, AdaptHealth alternatively argues that even if § 64.1200(e) is legislative, it did not have an adequate prior opportunity to seek judicial review because the Proposed Rulemaking was insufficiently specific regarding the question of including wireless phones. That contention is unpersuasive, because the FCC specifically sought comment on "the extent to which wireless subscribers may be considered 'residential' for purposes of the TCPA." *See In re: Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 F.C.C. Rcd. 17459, 17485, 17491 (Sep. 18, 2002). In addition, AdaptHealth had another opportunity to seek judicial review after the 2003 FCC Order was issued, and it has not explained why that opportunity was inadequate. The Hobbs Act's exclusive-review provision allows challenges to FCC final orders to be brought in a court of appeals "within 60 days after" the entry of the order in question, 28 U.S.C. § 2344. In other words, AdaptHealth had an opportunity to seek judicial review not at the time of the proposed rulemaking, but once the 2003 FCC Order had been issued and AdaptHealth could see what it said. The limitation on this Court's jurisdiction by the Hobbs Act makes practical sense. Permitting private parties to indefinitely challenge FCC rulings that have the force and effect of law would undermine the established expectations of regulated parties and cause substantial uncertainty. The Hobbs Act "procedural path created by the command

of Congress 'promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress to enforce the TCPA.'" *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014) (quoting *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010)). "To hold otherwise merely because the issue has arisen in private litigation would permit an end-run around the administrative review mandated by the Hobbs Act. Such an end run could result in a judicial determination of a regulation's invalidity without participation by the agency and upon a record not developed by the agency." *Nack v. Walburg*, 715 F.3d 680, 686 (8th Cir. 2013).

Given the Hobbs Act's provisions, this Court lacks jurisdiction to review the 2003 FCC Order. This Court therefore joins the majority of courts throughout the country who have held that cell phones like Tessu's are entitled to the TCPA's protection as residential telephones. *See* ECF 28 at 25–26. There is no basis to dismiss Count I.

## IV.    CONCLUSION

For the reasons set forth above, AdaptHealth's Motion to Dismiss Count I, ECF 18, is denied. A separate Order follows.


Dated: August 17, 2023                              _____/s/_____
                                                   Stephanie A. Gallagher
                                                   United States District Judge